**In re BONDED MAILINGS, INC., Debtor.**

**In re INTERSTATE COMPUTER SERVICES, INC., Debtor.**

**Bankruptcy Nos. 881–82036–20, 881–82523–20.**

United States Bankruptcy Court, E. D. New York, at Westbury.

May 18, 1982.

Louis P. Rosenberg, Brooklyn, N.Y., for Bonded Mailings, Inc.

Hauptman & Hauptman by Sol A. Hauptman, Brooklyn, N.Y., for Interstate Computer Services, Inc.

W. D. O'Reilly, Westport, Conn., for Contemporary Missions, Inc.

M. David Graubard, New York City, Examiner.

ROBERT JOHN HALL, Bankruptcy Judge.

Upon the recommendations of Contemporary Mission, Inc. ("CMI") and the report of the Court appointed examiner, M. David Graubard, the Court finds that the appointment of a trustee, if only in a "watch dog" capacity, to be required by section 1104 of the Bankruptcy Code, 11 U.S.C. § 1104 (Supp. IV 1980).,

In order to understand the issues at bar, a recitation of some history is required.

### History of Bonded and Interstate

Bonded Mailings, Inc. ("Bonded") is a wholly owned subsidiary of Interstate Computer Services, Inc. ("Interstate") (collectively "the debtors"), a publicly owned corporation. The ownership of Interstate is split between Max Houss who owns about 62% of Interstate's stock and some 300–400 other shareholders who hold the balance. Max Houss runs and controls Interstate and thereby Bonded.

Bonded was formed in 1952, was incorporated in 1956, and is in the business of providing a mailing service. In other words if a customer is interested in effectuating a solicitation by mail, he would deliver the material to Bonded who would "stuff" and address the envelopes and transport them to the Post Office for mailing.

Interstate was incorporated in 1972 and is engaged in the business of providing computer services. Apparently a large part of its business is maintaining mailing lists which it makes available to customers who are interested in making a direct mail solicitation.

Up until 1972, Bonded and Interstate were separate corporations. Bonded owned the folding and inserting machines it uses in its business and maintained its own accounts receivable. In 1972, Bonded became a wholly owned subsidiary of Interstate. Thereafter, they attempted to maintain their corporate identities by allocating expenses and by intercorporate billing. This degenerated, however, into financial confusion. Consequently, when Max Houss was seeking financing in 1979, he was told to "clean up his balance sheet" by clearing up the intercorporate accounts. Accordingly, in 1979 Bonded transferred all of its assets to Interstate in exchange for the satisfaction of Bonded's intercorporate debt. This, however, apparently cured only the symptom and not the problem for Max Houss continued to run both corporations as two departments of one enterprise. In other words, if someone wished to effectuate a mail solicitation, they came to Max Houss who provided mailing lists and mailing manpower through Interstate and Bonded. Then, after the billing was effectuated, some confused attempt, which no one seems to understand, was made to allocate expenses and revenues between the two corporations. For example, the examiner found that:

[i]nvoices have been submitted to customers by one corporation which indicate

services performed by the other. No allocation was made when the invoice was paid. The funds went into the bank account of the receiving corporation to be disbursed for its own expenses.

Report of the Examiner at 19. Moreover, although Bonded was entitled to a 1% royalty on some of Interstate's revenues under the 1979 exchange of asset transaction, the examiner found that there has never been an accounting of such payments. *Id.* at 20.

It was against this backdrop that CMI became involved with the debtors.

### The Lawsuit

CMI purports to be a not-for-profit corporation engaged in religious and charitable pursuits. Its members consist of a small group of Roman Catholic and Eastern-rite priests whose primary financial support is generated via a mail-order business. CMI's product line has included such titles as "Young & Firm" (a weight reducing bath), the "Edgar Cayce Handbook of Health" ("Cayce") and the "Guaranteed Tax Plan" ("Tax Plan"). *See Contemporary Missions, Inc. v. United States Postal Service,* 648 F.2d 97, 100 (2d Cir. 1981).

Around October of 1977, CMI contracted with Bonded for its mailing of several million solicitation pieces for CMI's Cayce and Tax Plan publications. Bonded breached this contract and CMI sued Bonded, Interstate and Max Houss in January 1978 in the District Court for the Eastern District of New York. However, the claims for relief against Interstate and Houss were dismissed at the close of the CMI's case by District Judge Costantino. *Contemporary Mission, Inc. v. Bonded Mailings, Inc.,* No. 78C149 at n.3 (E.D.N.Y. June 1, 1981). Thereafter, on 30 May 1980, the jury awarded CMI $232,000 in compensatory damages and $750,000 in punitive damages, and a judgment for these amounts was entered by the Clerk of the District Court on 5 June 1980. Judge Costantino, however, stayed execution initially until 24 June 1980. Thereafter, Bonded moved for a judgment notwithstanding the verdict and Judge Costantino extended the stay

conditioned on Bonded's furnishing a $200,000 bond. When Bonded claimed it could not raise $200,000, Judge Costantino conditioned the extended stay *inter alia* on Max Houss' promise not to transfer any assets of Bonded except in the ordinary course of business.

Thereafter, CMI claimed that it had discovered evidence that Max Houss was looting Bonded and moved that it might enforce its judgment against the assets of Interstate.

On 1 June 1981, Judge Costantino filed a Memorandum of Decision and Order in which he granted Bonded judgment notwithstanding the verdict for the punitive damages as being unavailable under the applicable New York law, granted CMI its judgment for the compensatory damages and ordered that CMI might secure its judgment against Interstate's assets. As to this final element of relief, Judge Costantino stated:

> After an examination of all of the facts, this court concludes that Mr. Houss has systemically [sic] drawn both assets and business away from Bonded in violation of numerous orders of this court, and has given that business to the parent Interstate in a flagrant attempt to avoid the judgment. This court will not sit idle and allow such frauds to be perpetrated without sanctions.

*Contemporary Missions, Inc. v. Bonded Mailings, Inc.,* No. 78C149 at 19 (E.D.N.Y. June 1, 1981). A divided Second Circuit affirmed on all counts. *Contemporary Mission, Inc. v. Bonded Mailings, Inc.,* 671 F.2d 81 (2d Cir. 1982).

In the interim, however, on 15 June 1981, Bonded filed under chapter 11 of the Bankruptcy Code and, after CMI sent restraining notices to Interstate's creditors, Interstate filed similarly on 2 July 1981.

Thereafter, by an order to show cause returnable on 3 August 1981, CMI moved to dismiss each of these bankruptcy proceedings, convert each case to a chapter 7 liquidation or in the alternative have a trustee appointed under sections 1104(a), 1112(b) of the Code, 11 U.S.C. §§ 1104(a), 1112(b), whereupon the Court appointed an examin-

er to investigate the allegations and financial condition of both debtors and make recommendations to the Court based thereon.

On 24 December 1981, the examiner filed his report which coincidentally confirmed Judge Costantino's findings.[1] Specifically, the examiner found that notwithstanding the fact that the line of demarcation between the two debtors had always been blurred, after 24 June 1980 (the date on which Judge Costantino's stay of execution on the judgment against Bonded was originally to expire) work done and billed by Bonded ended up as proceeds in Interstate's accounts. However, in spite of this clear fraud on CMI, the examiner recommended that inasmuch as all of the fraudulent transfers occurred between Bonded and Interstate, who were both now before this Court, a substantive consolidation of the cases would be proper and sufficient response. Examiner's Report at 23.

Finally, on 16 February 1982 an adjourned hearing was held on the Court's own motion on notice to the debtors, the examiner and CMI to consider the examiner's report and any other recommendations made by any party in interest. CMI, thereupon, renewed its motion for dismissal, conversion or the appointment of a trustee.

Based on all of the foregoing, the Court makes the following Findings of Fact:

1. Both Bonded and Interstate were and are profitable enterprises.

2. Bonded and Interstate are each indebted to CMI in an amount in excess of $232,000 which makes CMI the largest creditor of each.

3. Both Bonded and Interstate were and are run and controlled as a single enterprise by Max Houss.

4. Even prior to June of 1980, the intercorporate records were confused.

5. As of June 1980, the present management of both debtors (i.e., Max Houss) engaged in fraudulent conduct designed to frustrate CMI in its attempt to enforce its judgment which resulted in a further shifting of assets between the corporate debtors hopelessly confusing their records.

6. The debtors have been creating and repaying alleged loans without the benefit of court authorization nor sufficient documentation.

7. Nonetheless, Max Houss' expertise is needed for an effective rehabilitation of the debtors.

8. To date, however, no plan of reorganization has been filed by either debtor; nor has the exclusive time period in which each debtor has to file a plan been extended.

## Discussion

### A. Dismissal or Conversion

Section 1112(b) provides the criteria for the dismissal of a chapter 11 case or its

---

[1]. CMI had argued that Judge Costantino's findings of fraud collaterally estopped both Bonded and Interstate from relitigating that issue. Bonded's counsel, on the other hand, represented to this Court that Judge Costantino had expressly granted this Court the power to redetermine that question de novo. CMI vigorously contested that proposition and this Court was never presented with any minutes from the district court to support Bonded's conteno's findings of fraud collaterally estopped both Bonded and Interstate from relitigating that issue. Bonded's counsel, on the other hand, Notwithstanding the fact that the breach of contract action had been dismissed against Interstate and notwithstanding the fact that CPLR sections 5225(b) and 5227, N.Y.Civ. Prac.Law §§ 5225(b), 5227 (McKinney 1978) (made applicable by Rule 69 of the Federal Rules of Civil Procedure) would appear to require a special proceeding instead of a motion before CMI could obtain an independent judgment against Interstate under section 278(1)(b) of the Debtor and Creditor Law, N.Y. Debt & Cred.Law § 278(1)(b) (McKinney 1945); Siegel, *New York Practice* § 510 (1978), Judge Costantino entered judgment against Bonded and Interstate after making a finding of fraud. Therefore, inasmuch as the district court clearly had subject matter jurisdiction and such was a final order, neither Bonded nor Interstate cannot now be heard to complain of any impropriety.

However, inasmuch as the other circumstances of these cases required the appointment of an examiner, who coincidentally confirmed Judge Costantino's findings, the Court does not have to determine the issue of collateral estoppel.

conversion to chapter 7. Although the Code provides a nonexhaustive list of "causes" for such action, all are subject to the directive that what is to be done must be in the best interest of all of the creditors and the estate.

■ Dismissal has generally only been granted where the filing of the case was a bad faith sham on the court. *In re Victory Construction Co.*, 9 B.R. 549, 563–65 (Bkrtcy.C.D.Cal.1981). In other words in those cases in which the entity which filed never operated in business, never made a profit, was formed just to file, is losing money postpetition, has no hope of rehabilitation and has no unsecured creditors, it has been held that such a petition was filed merely to take advantage of the automatic stay, that that is an abuse of the bankruptcy court's jurisdiction and that the case should be dismissed. *See, e.g., In re First Lewis Road Apartments, Inc.*, 11 B.R. 576 (Bkrtcy.E.D.Va.1981); *In Re Alison Corporation*, 9 B.R. 827 (Bkrtcy.S.D.Cal.1981); *In re Nancant, Inc.*, 8 B.R. 1005 (Bkrtcy.D. Mass.1981); *In re Dutch Flat Investment Co.*, 6 B.R. 470 (Bkrtcy.E.D.Ga.1980). *See generally In re Northwest Recreational Activities, Inc.*, 4 B.R. 36, 1 C.B.C.2d 713 (Bkrtcy.N.D.Ga.1980). However, where as here a once viable business supporting employees and unsecured creditors has more recently been burdened with judgments that threaten to put it out of existence, unless and until, rehabilitation has been shown to be unfeasible, the bankruptcy courts are a most appropriate harbor within which to weather the storm. *See, e.g., In re Alton Telegraph Printing Company*, 14 B.R. 238 (Bkrtcy.S.D.Ill.1981). To dismiss these proceedings would be to throw the instant debtors to the mercy of CMI's collection efforts destroying both jobs and any hope of recovery by the debtors' other unsecured creditors in contravention of the Code's policy of equality of distribution among all creditors. H.R.Rep.No.595, 95th Cong., 1st Sess. 186 (1977), *reprinted in* [1978] U.S. Code Cong. & Ad.News 5787, 5963, 6147.

Similarly, inasmuch as the semi-monthly operating reports each debtor has been filing pursuant to Local Rule 19 indicate that each is operating at a profit,[2] the Court is disinclined to order a conversion to chapter 7. The purpose of chapter 7 is the orderly liquidation of entities which cannot be successfully rehabilitated under other chapters of the Code. Perhaps these debtors cannot. In fact no plan of reorganization has been filed. Nevertheless, these debtors are apparently viable businesses which must be given a reasonable amount of time to work out an arrangement with their creditors.[3] The Court, however, reminds the debtors that failure to propose a plan is grounds for conversion and cautions them that its patience is not boundless. As of this moment, however, the Court finds that neither dismissal nor conversion to chapter 7 to be appropriate avenues of relief.

### B. *Appointment of a Trustee*

■ Under chapter 11, it is generally presumed that the debtor will continue in possession. *In re La Sharene, Inc.*, 3 B.R. 169 (Bkrtcy.N.D.Ga.1980). There are obvious reasons for this. It is the debtor, presumably, who knows his own business. Consequently, the appointment of a trustee will generally necessitate the displacement of the current experienced management with those probably less familiar with the field at a time when the enterprise itself is usually tottering on the brink of financial collapse. In addition, the trustee will usually need to hire an attorney both of whom will be entitled to compensation from the estate. Accordingly, the appointment of a trustee is

---

**2.** Interpolating this information, the Court would project a $8,000 year end profit for Bonded and a $52,000 year end profit for Interstate.

**3.** The Court also notes that some of the delay has probably resulted from CMI's repeated declarations that it will accept no less that 100% of its debt and will vote down any proposed plan offering less than such amount. Such would, of course, force the debtors to resort to the more difficult provisions of section 1129(b) if confirmation is to be achieved. However, such disputes are not a sufficient excuse for failing to propose a plan. *In re Lake in the Woods*, 10 B.R. 338 (Bkrtcy.E.D.Mich.1981).

considered an extraordinary remedy to be awarded judiciously. *In re Anchorage Boat Sales, Inc.*, 4 B.R. 635, 644 (Bkrtcy.E.D.N.Y. 1980).

That notwithstanding, the Code specifies those circumstances in which the Court shall appoint a trustee. Section 1104(a) provides:

At any time after the commencement of the case but before the confirmation of a plan, on request of a party in interest, and after notice and a hearing, the court *shall* order the appointment of a trustee—

(1) *for cause, including fraud*, dishonesty, incompetence, or gross mismanagement, of the affairs of the debtor, *by current management either before or after the commencement of the case*, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or

(2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

11 U.S.C. § 1104(a) (emphasis added). In light of the section's explicit language, case law indicates that where such cause as is enumerated has been shown, the courts have no discretion but must appoint a trustee. *In re Anchorage Boat Sales, Inc.*, 4 B.R. at 644–45; *accord, In re McCordi Corp.*, 6 B.R. 172, 176–78 (Bkrtcy.S.D.N.Y. 1980); *In re Eichorn*, 5 B.R. 755, 757 (Bkrtcy.D.Mass.1980).

██ In the case at bar, this Court has found that the current management of both

of these debtors has engaged in fraudulent conduct designed to frustrate CMI in the satisfaction of its judgment. If for that reason alone, a trustee must be appointed. However, additional reasons can be found in the debtors' failure, after almost one year in chapter 11, to propose a plan of reorganization as well as the intransigence of CMI in its posture of demanding 100 cents on the dollar. Clearly, some third party must be brought in either to mediate the dispute, propose a plan that can be confirmed over CMI's objections or report to the Court that no rehabilitation is possible. Accordingly, a trustee is to be appointed in these cases.[4]

### C. The Duties of the Trustee

As indicated above when a trustee is appointed the prior management is usually supplanted. The bankruptcy court, however, is a court of equity, *see Pepper v. Litton*, 308 U.S. 295, 304, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939) and "equitable remedies are a special blend of what is necessary, what is fair, and what is workable", *Lemon v. Kurtzman*, 411 U.S. 192, 200, 93 S.Ct. 1463, 1469, 36 L.Ed.2d 151 (1973). Accordingly, inasmuch as the present management is running the businesses at a profit and the Court has its reservations as to whether a trustee could run these businesses at all, the trustee is being appointed in only a "watch dog" as opposed to a managerial capacity. Henceforth the debtors in possession shall disburse all payments by checks which shall be countersigned by the trustee who shall, of course, refuse to countersign any check until he is convinced of the bona fides of the underlying obligation. Business decisions, however, shall be left to the present management.

---

**4.** As indicated above, the examiner recommended substantively consolidating both cases, to which all of the parties appeared to be ambivalent. Based on what the Court has heard, had a request for consolidation been made on notice to all of the creditors, it would have granted it under the authority of *Chemical Bank New York Trust Company v. Kheel*, 369 F.2d 845 (2d Cir. 1966). *See also In re Continental Vending Machine Corp.*, 517 F.2d 997 (2d Cir. 1975), *cert. denied*, 424 U.S. 913, 96

S.Ct. 1111, 47 L.Ed.2d 317 (1976); *In re Richton International Corporation*, 12 B.R. 555 (Bkrtcy.S.D.N.Y.1981). Inasmuch as no such motion was made, the issue is not before the Court. However, the Court notes that the two debtors are being run as one enterprise and suspects that no plan could be confirmed absent a consolidation. Consequently, the Court is appointing one trustee to supervise both cases.

In addition, in accordance with section 1106(a)(5) and Interim Rule 3005(b), the trustee shall file a plan or a report of the reasons why a plan cannot be formulated within four months of the date hereof.

*Conclusion*

Based on the foregoing, it is

ORDERED, that CMI's motion to dismiss these cases or convert them to chapter 7 is denied; and it is further

ORDERED, that CMI's motion for the appointment of a trustee is granted to the extent that George W. Hudtwalker, Jr. is appointed trustee of both estates under the terms and conditions more fully specified above; and it is further

ORDERED, that his bond is fixed at $5,000.00; and it is further

ORDERED, that these two cases be and hereby are consolidated for procedural purposes only under the caption:

------------------------------ x
In re

Bonded Mailings, Inc.        No: 881–82036–20
Interstate Computer Services, Inc.

              Debtors.
------------------------------ x