**In re THE BIBLE SPEAKS, Debtor.**

**Bankruptcy No. 86–40392–JFQ.**

United States Bankruptcy Court,
D. Massachusetts.

June 9, 1987.

See also 73 B.R. 848.

Charles Morse, Sullivan & Worcester, Boston, Mass., Norman Grutman, Grutman, Miller, Greenspoon, Hendler & Levin, New York City, for debtor.

Gordon Walker, McDermott, Will & Emery, Boston, Mass., for Elizabeth Dovydenas.

## OPINION ON APPOINTMENT OF TRUSTEE

JAMES F. QUEENAN, Jr., Bankruptcy Judge.

Elizabeth Dovydenas ("Dovydenas") moves for the appointment of a trustee of this Chapter 11 case, pursuant to 11 U.S.C. § 1104.[1] At the hearing, both the Official

---

1. § 1104. Appointment of trustee or examiner
   (a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee—

Unsecured Creditors' Committee and the United States Trustee orally joined in the motion. The United States Trustee had previously moved for the appointment of an examiner, but has asked the Court to defer consideration of that motion pending a ruling on the present motion. The motion for the appointment of a trustee was granted by a bench order on June 5, 1987. We set forth here the Court's findings of fact and rulings of law.

This Chapter 11 case is unusual in that The Bible Speaks (the "Debtor") sought to reorganize primarily because of the threat posed by the Dovydenas claim. By Order dated May 19, 1987, the claim was allowed in the sum of $6,581,356.25, on the ground that Dovydenas's donations to the Debtor, a church, were the product of undue influence. The Court ruled that the Debtor's founder and president, Carl H. Stevens, Jr. ("Stevens"), had abused the trust of Dovydenas through acts of deceit and subjugation. The Debtor has appealed that order, and the Court has denied its motion for a stay pending the appeal. The trial was bitterly fought and produced a good deal of acrimony among counsel.

■ The appointment of a trustee in a Chapter 11 case is the exception rather than the rule. *Collier on Bankruptcy* (15th ed.), § 1104.01[b]. *In re Eichorn*, 5 B.R. 755 (Bankr.D.Mass.1980); *In re Garland Corp.*, 6 B.R. 456, 460 (Bankr.App.

Pan.D.Mass.1980). Section 1104(a) nevertheless permits the appointment on either one of two grounds: (1) "for cause, including fraud, dishonesty, incompetence, or gross mismanagement ...," or (2) if the appointment is "in the interests" of creditors and others. This second ground is regarded as the more difficult to apply because of the lack of helpful legislative history and because of the broad ramifications of "cause" under the first ground. *See Collier on Bankruptcy* (15th ed.) § 1104.01[d]. We conclude that both grounds exist here. There is "cause" for the appointment, and the appointment is in the interests of the creditors and others holding interests in the estate. We arrive at that conclusion in light of a number of considerations which separately furnish authorization for the appointment under one or both of the branches of § 1104(a). Collectively they compel the appointment.

1. *Legalistic Bickering Between Debtor and Creditors (§ 1104(a)(2))*

■ The Creditors' Committee is represented by counsel who do not represent Dovydenas. Friction, however, has developed between the Debtor and the Creditors' Committee which threatens to engulf this estate in costly and legalistic bickering over the entire range of the reorganization process. The recent hearing which was

(1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or

(2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

(b) If the court does not order the appointment of a trustee under this section, then at any time before the confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate, including an investigation of any allegations of fraud, dishonesty, incompetence,

misconduct, mismanagement, or irregularity in the management of the affairs of the debtor of or by current or former management of the debtor, if—

(1) such appointment is in the interests of creditors, any equity security holders, and other interests of the estate; or

(2) the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000.00.

(c) If the court orders the appointment of a trustee or an examiner, if a trustee or an examiner dies or resigns during the case or is removed under section 324 of this title, or if a trustee fails to qualify under section 322 of this title, then the United States trustee, after consultation with parties in interest, shall appoint, subject to the court's approval, one disinterested person other than the United States trustee to serve as trustee or examiner, as the case may be, in the case.

held on the Debtor's objection to a proposed disclosure statement is an example. The Creditors' Committee seeks to propose a plan of reorganization which calls for the immediate payment in full, with interest, of the claims held by all creditors except Dovydenas, which total less than $300,000.00. The plan creates a trust of most of the Debtor's property, pending a final disposition of the Dovydenas claim on appeal. Debtor's counsel filed both an opposition to the disclosure statement and a motion to show cause why the proposed plan is not confirmable. Debtor's counsel argued two points which strike the Court as frivolous: that the Dovydenas claim should be subordinated to other claims under the doctrine of *Matter of Sterling Homex,* 579 F.2d 206 (2d Cir.1978), *cert. den. sub. nom., Jezarian v. Raichle,* 439 U.S. 1074, 99 S.Ct. 847, 59 L.Ed.2d 40 (1978), which concerned rescission claims of stockholders; and that voting rights of the Debtor's board of trustees constitute "interests" impaired under the plan in view of the fact that the Debtor has no equity security holders. Debtor's counsel also urged that no disclosure statement was necessary because the Debtor's board of trustees had already rejected the plan, and because the plan impaired only one creditor, Dovydenas, whose counsel had participated in its drafting. The Court responded to this latter argument by pointing out that the logical conclusion from it was that the hearing which counsel had required concerning the adequacy of the disclosure statement was an exercise in futility. Counsel agreed and sat down. Counsel for the Debtor has taken similar legalistic positions on other matters during the case.

The plan which the Creditors' Committee seeks to propose calls for a trust to be created from the Debtor's property, with the property to be leased back to the Debtor at the trustee's operating cost, pending final resolution of the Dovydenas claim. If the claim is not finally resolved in three years, the property is to be sold, after first being offered to the Debtor at a price sufficient to pay the Dovydenas claim with interest at 8% per year. If confirmed, this plan will not be a simple one to consummate. Consummation will likely raise a number of practical problems whose resolution will require a spririt of cooperation between the Committee and the representatives of the Debtor, a spirit that is unlikely to be present if the Debtor remains as a debtor in possession. The need for a neutral party to mediate disputes between the debtor and its creditors is ground for a trustee's appointment. *In re Bonded Mailings, Inc.,* 20 B.R. 781 (E.D.N.Y.1982).

### 2. *Cost of Appeal From Allowance of Dovydenas Claim (§ 1104(a)(2))*

A trustee will provide an objective and dispassionate view on the question of whether the cost of appeal from the allowance of the Dovydenas claim is justified. Defense of the claim has already caused the Debtor to incur claims for legal services of about $960,000.00 plus expenses. Some $250,000.00 of a $500,000.00 retainer was consumed prior to the Chapter 11 filing, as the result of litigation in two state courts. Co-counsel to the Debtor have filed fee applications seeking compensation for services during the Chapter 11 proceeding, primarily in contesting the Dovydenas claim, totalling $711,840.30, plus expenses. (Only a small portion of this has been allowed to date as interim compensation.) The Debtor, by its own admission, regards these costs as justifiable because it considers an appeal necessary for its "survival." Debtor's counsel constantly speaks of taking appeals to the Supreme Court if necessary. A tactic which Debtor's counsel has already begun to employ is to threaten to sabotage any plan of reorganization by arguing that it cannot be confirmed because it provides insufficient funds for an immediate payment of the Debtor's accrued legal expenses. This attitude on the part of the Debtor and its counsel concerning appeal on the Dovydenas claim and a creditor plan hardly represents an objective view which takes into account the interests of all creditors. It is estimated that the Debtor's extensive real estate may be worth only slightly more than the total of all claims, including the Dovydenas claim. Based on what defense of the claim has cost to date,

that appellate process obviously threatens the collectability of the Dovydenas claim even if the claim is sustained on its merits. A trustee will examine the matter from the viewpoint of all the parties, Debtor and creditors alike, and make his independent judgment on the advisability of appeals.

### 3. *Stevens's Conduct (§ 1104(a)(1))*

The May 19, 1987 decision allowing the Dovydenas claim contained findings of dishonesty and deceit on the part of Stevens. Two days prior to the hearing on the present motion, Stevens resigned as president of the Debtor, leaving his son, Paul Stevens, as its chief executive officer. The son will retain his title as vice-president. Stevens will reportedly spend more time preaching elsewhere in this country and the world. He was not present at the hearing because of an out-of-state engagement. At the hearing, Debtor's counsel admitted that Stevens remained as the head of the "movement." No attempt is presently being made to fill the office of president. The Court finds that Stevens continues to play an influential role in the operation of the Debtor. Based upon his past dishonesty concerning Dovydenas, that role presents a threat to the integrity of this Chapter 11 reorganization. The Court further finds that his resignation was largely a ploy in an attempt to avoid the appointment of a trustee.

### 4. *Lack of Leadership (§ 1104(a)(2))*

Although Stevens will likely continue to have an influential role with the Debtor, the fact remains that there will be a void in the Debtor's leadership. Paul Stevens lacks the necessary maturity and administrative experience for such a post. He testified that the Debtor will be under the collective leadership of its trustees. The Debtor needs more than this. It requires the cohesive and full time direction of an experienced executive, particularly in this time of crisis. *See Collier on Bankruptcy* (15th ed.), § 1104.01[d].

### 5. *Organization of Friends of The Bible Speaks (§ 1104(a)(1) & (2))*

■ The Debtor has recently decided to organize a trust for the purpose of raising funds outside of the Debtor, under the name of The Friends of The Bible Speaks. The Debtor's counsel has given information concerning the matter in an affidavit filed with the Court. That affidavit, however, asserts the attorney-client privilege concerning some of the conversations that form the basis for the trust. The Court is at a loss to understand how such a trust can be regarded as consistent with the Debtor's obligations as a debtor in possession. If the trust were to achieve its purpose, its funds would be beyond the reach of the creditors. The organization and implementation of this trust is contrary to the purposes of this Chapter 11 reorganization. The Debtor's expressed intention to embark on such a project convinces the Court that the Debtor should no longer be permitted to exercise the fiduciary obligations which are incumbent upon it as a debtor in possession.

### 6. *Inevitability of Appointment of Examiner (§ 1104(a)(2))*

■ Because the Dovydenas claim is in an amount that exceeds $5,000,000.00, § 1104(b)(2) requires the appointment of an examiner if a trustee is not appointed. Thus the estate will have to incur some substantial expense for the services of a new functionary in any event. To that extent, therefore, the cost of a trustee will not represent an avoidable expense. For all of the reasons set forth previously, this case cries out for the services of a trustee. An examiner would lack the powers to accomplish what must be done.