**In re SCHEPPS FOOD STORES, INC., et al., Debtors.**

**Civ. A. No. 92–3537.**
**Bankruptcy No. 91–49816–H4–11.**

United States District Court, S.D. Texas, Houston Division.

Dec. 8, 1992.

Robert A. DeWitt, Craig J. Litherland, Edward L. Ripley, Houston, TX, for Schepps.

Joan Kehlhof, Houston, TX, and Winthrop, Stimson, Putnam & Roberts, New York City, for Smith Management Co.

## OPINION

HUGHES, District Judge.

### 1. *Introduction*

On the eve of the confirmation hearing, Smith Management Company filed this emergency appeal. The bankruptcy court decided to hear Smith's motion for the appointment of an examiner only if the debtor, National Convenience Stores, fails to obtain confirmation of the plan in December, 1992. Smith argues that, under the bankruptcy code, the bankruptcy court has no discretion to deny the appointment of an examiner before confirmation of a plan;

thus the bankruptcy court's scheduling effectively denies Smith's right to an examiner. While Smith's literal reading of the statute is the only interpretation that can be supported by both the plain language and context of the code, Smith has waived its right to an examiner by its delay in bringing a request.

### 2. *Procedural History.*

One year ago, National began a voluntary reorganization under the code. After an extension of its exclusive time to file a plan, National has filed three plans in the space of two and a half months. During the hearing on approval of the Third Amended Disclosure Statement, held on October 2, 1992, Smith, for the first time, raised the possibility that it would ask for the appointment of an examiner. At that time, the bankruptcy court indicated that it wanted to keep the momentum of moving towards a confirmation hearing, and a few days later set December 9 as the date for that hearing. The bankruptcy court approved the disclosure statement on October 7.

On October 27, Smith filed its motion for the appointment of an examiner to investigate the possibility of bad faith by National. On November 5, the bankruptcy court issued its order delaying a hearing on the motion until after the confirmation hearing. The bankruptcy court stated that the motion made claims that appeared largely duplicative of allegations that had already been made and that the court expected to be made in objection to confirmation of the plan. Smith appealed on November 12.

### 3. *Procedural Issues.*

#### A. Appeal by Right.

Smith argues that, by delaying a ruling on its motion until after the outcome of the confirmation hearing, the bankruptcy court has effectively denied it the relief it is seeking, because if the plan is confirmed, Smith's right to an examiner is extinguished. Because of the possibility of confirmation, Smith urges that the order makes a final determination of its rights to an examiner and should be treated as a

final judgment that is appealable to this court.

■ Appeal by right is available only if the order or judgment is final. 28 U.S.C. § 158(a) (1988). While in the bankruptcy context discrete issues can be "final" without an ultimate disposition of the entire case, there must be a final determination of the rights of the party to secure some particular relief, which it seeks to appeal. *See In re County Management, Inc.*, 788 F.2d 311, 313 (5th Cir.1986).

■ Even if the bankruptcy court had denied the appointment of an examiner, that denial would not be a final determination of a party's rights for the same reasons that the approval of a disclosure statement is not considered a final order, or that an order denying confirmation is not, because it does not resolve any dispute between the parties. *See In re Texas Extrusion Corp.*, 844 F.2d 1142, 1155 (5th Cir.), *cert. denied*, 488 U.S. 926, 109 S.Ct. 311, 102 L.Ed.2d 330 (1988); *In re MCorp Fin., Inc.*, 139 B.R. 820, 822 (S.D.Tex.1992). In fact, the bankruptcy court merely issued a scheduling order, albeit one that has the potential of making Smith's motion moot.

B. Permissive Appeal.

■ The dilemma created by the finality rule is resolved by this court's discretion to hear appeals from interlocutory orders. 28 U.S.C. § 158(a). Also, the bankruptcy rules allow this court to treat an improperly filed appeal as a motion for leave to file an appeal of an interlocutory order. Fed. R.Bankr.P. 8003(c). This court will treat the notice of appeal as a motion for leave to appeal.

■ The standards for granting leave to appeal an interlocutory order of the bankruptcy court are guided by the statute governing interlocutory appeals from the district court to the circuit court. 28 U.S.C. § 1292(b). Leave may be granted where "a controlling question of law as to which there is substantial ground for difference of opinion" exists. *Id.* Whether the appointment of an examiner is mandatory upon a creditor's request, and if so, wheth-

er the right can be invoked upon the eve of confirmation, is a significant question of statutory interpretation which will affect the process of this bankruptcy, as well as others. Leave to appeal will be granted.

4. *Appointment of an Examiner.*

Smith argues that an examiner should have been appointed on its motion before the confirmation hearing. The code provides for appointment of an examiner in two circumstances, one facially mandatory, the other permissive:

[A]t any time before the confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate, including ... allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor ... if—

(1) [it] is in the interests of creditors, any security holders, and other interests of the estate; or

(2) the debtor's fixed, liquidated, unsecured debts ... exceed $5,000,000.

11 U.S.C. § 1104(b) (1987).

Smith claims that the bankruptcy court found discretion in the mandatory clause where there is none and abused its discretion under the permissive clause in not scheduling the motion hearing before the confirmation hearing.

5. *Section 1104(b)(2) Is Mandatory.*

There is no dispute that Smith qualifies factually to invoke the mandatory clause, as the appropriate debts of National exceed $5,000,000. The question is whether the mandatory language provision forestalls judicial discretion in appointment of an examiner. There is no consensus. *See In re Shelter Resources Corp.*, 35 B.R. 304 (Bankr.N.D.Ohio 1983) ("to slavishly and blindly follow the so-called mandatory dictates of Section 1104(b)(2) is needless, costly and nonproductive"); *In re Revco D.S., Inc.*, 898 F.2d 498 (6th Cir.1990) (appointment is mandatory); *In re Mechem Fin. of*

**30**

*Ohio, Inc.*, 92 B.R. 760 (N.D.Ohio 1988) (appointment is mandatory, but statutory conditions not met); *In re The Bible Speaks*, 74 B.R. 511 (Bankr.D.Mass.1987) (statute inevitably requires appointment). A leading treatise presents both sides of the issue while failing to take a definitive stand. *See* 5 Lawrence P. King, et al., Collier on Bankruptcy ¶ 1104.03, at 1104–42, –43 (15th ed. 1992).

■■■ If a statute speaks with clarity to an issue, judicial inquiry is complete. *Estate of Cowart v. Nicklos Drilling Co.*, — U.S. —, —, 112 S.Ct. 2589, 2594, 120 L.Ed.2d 379 (1992); *Patterson v. Schumate*, — U.S. —, —, 112 S.Ct. 2242, 2248, 119 L.Ed.2d 519 (1992). In interpreting statutes, the court must look not only to the words of the provision, but to the relation of those words to the whole statute. *King v. St. Vincent's Hosp.*, — U.S. —, —, 112 S.Ct. 570, 574, 116 L.Ed.2d 578 (1991); *Kelly v. Robinson*, 479 U.S. 36, 43, 107 S.Ct. 353, 357, 93 L.Ed.2d 216 (1986). Courts look to text, context, and structure.

To find discretion in this provision, one would have to slight the word "shall" and ignore the contrast between the adjacent clauses. National argues that the phrase "as is appropriate" modifies "shall," providing the discretion that it seeks. This reasoning is both grammatically and contextually wrong. In the provision, "as is appropriate" modifies "investigation." The statute allows the court to determine the scope, length, and conduct of the investigation, rather than the appointment itself. *See In re Revco*, 898 F.2d at 501.

■■ Supporting the grammatical reading is the phrase's juxtaposition with the immediately proceeding section. A provision for discretionary appointment, where the court is to consider the interests of parties in making *its own determination* whether an examiner is necessary, followed by a provision that only considers whether a dollar criterion has been satisfied, is conclusive that the second provision is compelling on the court. The first clause is conditional on the court's determination of interests, while the second one is conditional on the

size of the debt. While Congress may not have foreseen the problems that arise when discretion over an appointment of an examiner is missing, that is not sufficient grounds for refusing to give effect to the plain meaning of the statute. *See Union Bank v. Wolas*, — U.S. —, —, 112 S.Ct. 527, 531, 116 L.Ed.2d 514 (1991).

**6.** *A Party May Waive Code Protection by Its Inaction.*

■■■ Finding that the provision is mandatory does not end the inquiry. The request for the appointment of an examiner came on the eve of the confirmation hearing. While the statute states that the court may appoint an examiner any time before the plan is confirmed, a creditor cannot use the provision to disrupt the proceedings. Statutory interpretation must not confound with the drafters' intent. *See United States v. Ron Pair Enter., Inc.*, 489 U.S. 235, 243, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989); *Kelly*, 479 U.S. at 43, 107 S.Ct. at 357. The code is a careful attempt to protect the rights of creditors and debtor alike, while vesting the court with the authority to manage the process in a way that both protects those rights and efficiently concludes disputes and ends the bankrupt status, whether by reorganization or otherwise. While Smith had the right to obtain the appointment of an examiner, it is possible for it to have waived that right.

Smith's request for an examiner is predicated on the need to investigate alleged bad faith on the part of the debtor's current management. In short, Smith argues that the differences between the three separate plans filed show that the earlier plan was based on misrepresented facts. Smith further argues that the structure of the current plan is an attempt to keep current management in control of the debtor and to continue an equity stake for them in the debtor, rather than a good faith effort to follow the dictates of the code, including the absolute priority rule. The first time Smith mentioned that it might request the appointment of an examiner, on the very narrow issue of good faith in National's plan proposals, was at the October 2, 1992,

hearing. At that hearing, Smith stated its concerns that a trust was being written that had the "ulterior motive ... to maintain the old directors and officers of this company in control." Smith added "[a]nd this is nothing new. [We have] had this debate with [counsel for National] for probably two months now ... and we probably will not resolve it." Disclosure Statement Hearing, Oct. 2, 1992, Tr. at 43–44.

By counsel's own admission, Smith's concern dates back to early August, when a request for an examiner would have given the bankruptcy court ample time to comply with the code and to structure the investigation appropriately. Instead, Smith waited until October 27, twenty days after the date of the confirmation hearing was set, to make its request. There is ample support in the record to conclude that Smith's interest in the appointment of an examiner is a tactic to prevent confirmation, rather than to investigate bad faith allegations.

This conclusion is supported by the bankruptcy court's order, where it asserts that Smith's allegations are little more than the normal objections that it will make at the confirmation hearing. The record is replete with indications that Smith has a fundamental disagreement with the bankruptcy court about how to handle these allegations of bad faith, and it has consistently indicated that it wants the confirmation hearing continued. In fact, the allegations are primarily about the structure of the plan, rather than fraudulent and dishonest operations by the debtor, the code's specific concern. *See* 11 U.S.C. § 1104(b). While it is correct that an appointment is not limited to those instances, Smith's request for use of the examiner provision, covering issues primarily dealt with in the confirmation process, at such a late date, is strong support of the bankruptcy court's decision. By its late action, Smith has waived its right to an examiner.

7. *The Bankruptcy Court Did Not Abuse Its Discretion under Section 1104(b)(1).*

The record clearly supports the bankruptcy court's decision to schedule the ap-

pointment of an examiner hearing for after the confirmation hearing. There is no abuse of discretion.

8. *Conclusion.*

Felicity to statutory demands may produce outcomes that are burdensome to process and contrary to judicial expediency. The remedy, however, lies with the legislature, not the courts. The section on appointment of an examiner at the request of a party in interest is mandatory. If the plan is not confirmed, Smith will be entitled to the appointment of an examiner, under the restrictions the bankruptcy court finds useful. At the present time, however, Smith has waived that right, because it waited until the last minute.