### In re Charles RUTENBERG, Debtor.

### Bankruptcy No. 93–1564–8P1.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Aug. 10, 1993.

———

Charles M. Tatelbaum, Tampa, FL, for debtor.

Sara Kistler, Asst. U.S. Trustee.

Steven C. Dupre, Tampa, FL, for Barnett Bank.

### ORDER ON DEBTOR'S MOTION TO APPOINT EXAMINER

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a yet to be confirmed Chapter 11 case and the matter under consideration is a truly unique Motion filed by Charles Rutenberg (Debtor). The Debtor in his Motion seeks an order directing the appointment of an examiner pursuant to § 1104(b)(2) of the Bankruptcy Code. This Section provides, inter alia, that:

**§ 1104. Appointment of trustee or examiner**

(b) If the court does not order the appointment of a trustee under this section, then at any time before the confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate, including an investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of affairs of the debtor of or by current or former management of the debtor, if—

(1) such appointment is in the interests of creditors, any equity security holders, and other interests of the estate;  or

(2) the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000.

As noted, the Motion is unusual because neither research of counsel nor independent research has been able to locate a case where the debtor, especially an individual debtor, sought the appointment of an examiner.  The reason for this should be obvious if one considers the function and duties of an examiner appointed under this Section.  Subclause (b) clearly states that the purpose of the appointment is to investigate the affairs of a debtor for the purpose of determining whether or not the debtor is guilty of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor.  One cannot think of a solid reason why a debtor would request an investigation of its own affairs unless it is used as a strategic move to prevent a harsher alternative which is the appointment of a trustee under § 1104(a)(1) or to delay the progress of the Chapter 11 case in expectation that the delay would enable the Debtor to negotiate or ultimately obtain an agreement which would salvage or save the Debtor's interest in the estate.

In considering the merits of the Motion, the very first problem centers around the question of whether or not the Debtor has standing to seek appointment of an examiner to begin with.  The Debtor concedes that the term "party in interest" itself is not defined by § 101, the definition Section of the Code.  It is clear that by virtue of § 1109(b), the Debtor has a right to be heard, thus the Debtor is a party in interest.  The question is, however, is the Debtor a party of interest for all matters which arise in a Chapter 11 case or only those which directly affect the Debtor's rights.

There is hardly any question that the Debtor is in fact a party in interest concerning several different matters.  However, whether or not the Debtor is a party in interest should not be viewed in a vacuum and must be considered in the context in which the standing issue is raised.  For instance, the Debtor is clearly a party in interest concerning any matter which relates to the Debtor's attempt to achieve reorganization under Chapter 11, matters which relate to confirmation matters, allowance or disallowance of claims and anything which impacts and affects the Debtors rights, directly or indirectly.  It is very difficult if not well-nigh impossible to visualize a scenario where the appointment of an examiner at the request of the Debtor would serve any valid purpose.  After all, the duties of the examiner are limited to the tasks specified in § 1106(b) which provides that the examiner shall perform the duties of the trustee specified in paragraphs (3) and (4) of subsection (a) which includes, among others, the duty to:

(3) ... investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan;

(4) as soon as practicable—

(A) file a statement of any investigation conducted under paragraph (3) of this subsection, including any fact ascertained pertaining to fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor, or to a cause of action available to the estate;  and

(B) transmit a copy or a summary of any such statement to any creditors' committee or equity security holders' committee, to any indenture trustee, and to such other entity as the court designates.

Thus, notwithstanding the plain language of the § 1104(b)(2), this Court is reluctant to accept the proposition that the Debtor in fact has standing to seek the appointment of an examiner.

In support of his Motion, the Debtor cites the case of *In re Parr*, 1 B.R. 453 (Bankr. Ed.N.Y.1979) in which the debtor in the Chapter 11 case consented to the appoint-

ment of a trustee. This case furnishes scant, if any, support for the proposition that the Debtor has standing to request the appointment of an examiner. Obviously, there is a difference when a debtor consents to the appointment of a trustee when appointment is sought by a creditor when the Debtor itself seeks appointment of a trustee. It is not unusual that when a creditor seeks appointment of a trustee the Debtor consents to the lesser of the two evils, that is the appointment of an examiner rather than lose control of the management of its affairs.

■ Assuming without conceding that based on the plain language rule enunciated by the Supreme Court in the case of *U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) that the Debtor has standing to seek the appointment, one still must consider the next problem which is whether or not the appointment is mandatory or the Court has discretion in light of the undisputed fact that this Debtor's fixed, liquidated, unsecured debts other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000. In this particular instance, it is without dispute that this Debtor is indebted to Barnett Bank of Pinellas County (Barnett) in excess of $10,000,000 based on a judgment entered against the Debtor in favor of Barnett. Thus, applying the plain language rule again it appears that the appointment of an examiner is mandatory because the Section uses the term "shall" and not the term "may".

The question was presented for the first time shortly after the adoption of the Code in the case of *In re Shelter Resources Corporation*, 35 B.R. 304 (Bankr.N.D.Ohio 1983). In *Shelter*, the Court noted that the appointment of an examiner under the facts of that case was not appropriate and to "slavishly and blindly follow § 1104(b)(2) is needless, costly and non-productive and would impose a grave injustice on all parties." *Shelter* was followed by the case of *In re GHR Companies, Inc.*, 43 B.R. 165 (Bankr.D.Mass.1984) in which the United States trustee moved for the appointment of an examiner. In *GHR* the motion was

objected to by other affiliated debtors who contended that "even if the Court finds that the requirements of (b)(2) have been satisfied, it must also find incidents of 'fraud, dishonesty, incompetence, misconduct, mismanagement or irregularity in the management of the affairs of the debtor' before the Court can authorize the appointment of an examiner under that subsection." The Court denied the Motion and based its ruling after total examination of the legislative history of the Section and its predecessor sections, and concluded that § 1104(b)(2) was enacted to satisfy the needs and dictates of the public company operating under the protections of Chapter 11 as a Debtor–in–Possession. *GHR* involved eight affiliated corporate debtors whose affairs were certainly complicated and conceivably would have required a pervasive investigation. Notwithstanding, the Court in *GHR* concluded that the use of the word "shall" does not always mean that the action is mandatory just as "may" at times may carry the meaning of "must." Based on the foregoing, the Court in *GHR* concluded that the appointment of an examiner is not mandatory even though the unliquidated not contingent debts exceed $5,000,000.

In support of the proposition that the Court is duty bound to interpret the plain language of the Statute according to its ordinary meaning, the Debtor relies on the case of *In re Revco D.S., Inc.*, 898 F.2d 498 (6th Cir.1990) where the Court of Appeals concluded that the appointment of an examiner is mandatory when a debtor's total fixed, liquidated, unsecured debts exceeds $5,000,000. In *Revco* the Court concluded that when the Court is called upon to interpret the Statute, the Court must give the words their ordinary, contemporary and common meaning, citing *Perrin v. United States*, 444 U.S. 37, 42 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979). Based on the foregoing, the Court concluded that when the Statute uses the term "shall" the term means imperative and mandatory and the word "shall" is a word of command and one which must be given a compulsory meaning, that is one which denotes obligation. *Black's Law Dictionary*, 1233 (5th

ed. 1979). The Bankruptcy Courts in *In re Mechem Financial of Ohio, Inc.*, 92 B.R. 760 (Bankr.N.D.Ohio 1988) and *In re The Bible Speaks*, 74 B.R. 511, 514 (Bankr. D.Mass.1987) concluded that appointment of an examiner is mandatory if sought pursuant to § 1104(b)(2). It should be noted, however, that in *The Bible Speaks* the Court did not appoint an examiner but appointed a trustee. The Debtor recognizes, as it must, that the entire legislative history for mandatory appointment of an examiner without exception involved publicly held companies.

As noted earlier, the Debtor in the present instance is an individual and no longer engaged in any business. His biggest antagonist, Barnett, has repeatedly sought permission from this Court to pursue certain fraudulent conveyances which allegedly were committed by the Debtor, claimed to have been discovered by Barnett during its investigation when it attempted to collect its judgment against the Debtor. Barnett is willing to fund the additional investigation to the extent it is needed to fund any adversary proceedings, none of which will cost the estate anything, which is not the case if the Debtor's Motion is granted and an examiner is appointed. Considering the adverse impact on the property of this Chapter 11 case if the Debtor's Motion is granted, the following should be noted. The Debtor filed his Disclosure Statement and Plan of Reorganization and a hearing to consider approval of the Disclosure Statement is scheduled to be held on August 10, 1994. Clearly, if the Motion of the Debtor is granted, any further proceeding on the Disclosure Statement must be abated pending the conclusion of the investigation and receipt of the report by the examiner which will cause further delay in the administration of this Chapter 11 case. Considering the totality of the factors, this Court is satisfied that the Motion of the Debtor is not well taken for the reasons stated.

Based on the foregoing, it is

ORDERED, ADJUDGED AND DECREED that the Debtor's Motion for Appointment of Examiner be, and the same is hereby, denied.

DONE AND ORDERED.