**In re BRADLEES STORES, INC., et al., Debtors.**

**Bankruptcy Nos. 95 B 42777 (BRL) thru 95 B 42784 (BRL).**

United States Bankruptcy Court, S.D. New York.

June 4, 1997.

Milbank, Tweed, Hadley & McCloy by Stephen J. Blauner, Ellen R. Werther, New York City, for Anvil Capital and Stonington Management Corporation.

Dewey Ballantine by Stuart Hirshfield, Sandor E. Schick, Hugh M. McDonald, Marc E. Hirschfield, New York City, for Debtors.

Otterbourg, Steindler, Houston & Rosen, P.C. by Glenn B. Rice, New York City, for Official Committee of Unsecured Creditors.

Skadden, Arps, Slate, Meagher & Flom by John W. Butler, Jr., J. Eric Ivester, Alesia Ranney–Marinelli, Chicago, IL, for Bankers Trust Company, as Senior Bank Agent.

Palmer & Dodge, L.L.P. by Jeanne P. Darcey, John J. Aquino, Boston, MA, for State Street Bank and Trust Company, as trustee.

Hebb & Gitlin by Michael J. Reilly, Hartford, CT, for Loomis Sayles & Company.

Simpson, Thacher & Bartlett by Lillian E. Kramer, Brian Trust, New York City, for The Stop & Shop Companies, Inc.

*MEMORANDUM DECISION AND ORDER DENYING MOTION TO APPOINT EXAMINER PURSUANT TO 11 U.S.C §§ 105(a) and 1104(c)*

BURTON R. LIFLAND, Bankruptcy Judge.

At today's hearing on the Motion, I found the requested relief to be inappropriate, improper and improvident. The following is the basis for that oral holding.

A self-proclaimed "Unofficial Committee of Trade Claim Holders" seeks the appointment of an examiner in the chapter 11 cases of Bradlees, Inc. ("Parent") and its subsidiaries (together with Parent, the "Debtors"). Notwithstanding such designation, this so-called committee is comprised of only two entities, Anvil Capital and Stonington Management Corporation (the "Claims Traders"), which specialize in the purchase and sale of distressed claims. The Claims Traders have an interest in approximately $50 million of general unsecured claims against Bradlees Stores, Inc. ("Stores"). The return that they stand to receive in these cases depends, in part, on the treatment of certain intercompany claims amongst the Debtors.

The Claims Traders contend that there is an immediate need for the appointment of an examiner to investigate any potential claims or causes of action relating to the 1992 acquisition by Parent of the stock of Stores and the other Debtors and the financing and refinancing of that transaction. The Debtors commenced these chapter 11 cases on June 23, 1995. Accordingly, pursuant to section 546(a) of the Bankruptcy Code, the statute of limitations to assert any such claims expires on June 23, 1997—19 days from today. *See* 11 U.S.C. § 546(a) (1997). Thus, the Claims Traders seek an order appointing an examiner *pre-armed* with authority, *inter alia,* within the scant few weeks remaining to, "file complaints against Stop & Shop and any other defendant not subject to a Court approved tolling agreement so as to prevent the running of the applicable statute of limitations." *See* Motion at 21. Despite the alleged urgency of the relief requested, the movants, eschewing the local rules of this court which allow for emergency motions on shortened notice, simply moved for this "urgent" relief by the longer route of a regular motion.

The Debtors, the Official Committee of Unsecured Creditors (the "Creditors' Committee"), State Street Bank & Trust Company, as indenture trustee on behalf of the holders of the 11% Senior Subordinated Notes and the 9 1/4% Senior Subordinated Notes, in the aggregate amount of $225 million, Bankers Trust Company, as agent for the Senior Bank Group, Loomis Sayles & Company, the single largest unsecured creditor of Parent and co-chair of the Creditors' Committee, and The Stop & Shop Companies, Inc. ("Stop & Shop"), all with disparate interests in these cases, strenuously object to the appointment of an examiner. No party in interest other than the movants supports the Motion.

*Background*

In July 1992, subsequent to an initial public offering by Parent, Bradlees Administrative Company, Inc. acquired the Bradlees business (the "Acquisition") from Stop & Shop. The series of transactions culminating in the Acquisition have been the subject of discussions amongst the parties from the outset of the Debtors' chapter 11 cases. Such issues concern, *inter alia,* potential causes of action against third parties and the validity of certain intercompany claims (the "Intercompany Claim"). At a chambers conference on August 8, 1995, this court, in an effort to

avoid duplication of work by professionals, directed that one fiduciary of the estates conduct a thorough legal and factual investigation into whether the estates had any causes of action arising out of the Acquisition. The parties agreed that the Debtors' professionals would conduct such investigation and report their findings to the parties. After many months of investigation and at substantial cost to the estates—a sum estimated to be between one and two million dollars—the Debtors' professionals concluded, in a 162–page report (the "Green Book"), that the Debtors have no viable claims against third parties arising out of the Acquisition and that the debt incurred by the Debtors in connection with the Acquisition was not voidable under sections 544 and 548 of the Bankruptcy Code. The Debtors' professionals did opine, however, that the Intercompany Claim may be subject to equitable subordination or recharacterization as a capital contribution. The Green Book was provided to the Creditors' Committee, the Claims Traders and the Senior Bank Group in September 1996. Despite their receipt of the Green Book eight months ago and their acknowledgment that the dispute over the validity and enforceability of the Intercompany Claim has "simmered" since the disclosure of such claim in October 1995, the Claims Traders have waited until 19 days before the expiration of the limitation period to seek this relief.

The movants also contend that the attorneys for both the Creditors' Committee and the Debtors have conflicting fiduciary obligations, in large part because of the existence of the Intercompany Claim. Thus, they argue that an examiner, as an independent fiduciary, is also required for the purpose of representing Stores and the other Debtor subsidiaries in connection with any settlement reached in respect of such claim. It is unclear, however, how one examiner for both Parents and Stores may adopt the partisan posture suggested by the movants. Moreover, the movants raised this "conflict" issue when objecting to fee applications in February 1996—over 15 months ago—but

waited until today's hearing to seek the appointment of an examiner.

*Discussion*

Section 1104(c) of the Bankruptcy Code provides that:

> (c) If the court does not order the appointment of a trustee under this section, then at any time before the confirmation of a plan, on request of a party in interest or the United States Trustee, and after notice and hearing, the court shall order the appointment of an examiner to conduct such investigation of the debtor as is appropriate, including investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor of or by current or former management of the debtor, if—
>
> > (1) such appointment is in the best interest of creditors, any equity security holders, and other interests of the estate; or
> >
> > (2) the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000.

11 U.S.C. 1104(c) (1997).[1]

■ Facially, section 1104(c)(2) appears to mandate that the court must appoint an examiner if, as in this case, the debtor has $5 million of qualifying debt. Despite the language of the statute, however, courts have reached different conclusions regarding its mandatory nature. *Compare Morgenstern v. Revco D.S., Inc. (In Re Revco D.S., Inc.),* 898 F.2d 498, 500–01 (6th Cir.1990) (appointment of examiner mandatory under § 1104(b)(2)); *In re Mechem Financial of Ohio, Inc.,* 92 B.R. 760, 761 (Bankr.N.D.Ohio 1988) (same); *In re The Bible Speaks,* 74 B.R. 511, 514 (Bankr.D.Mass.1987) (same); *In re 1243 20th Street, Inc.,* 6 B.R. 683, 685, n. 3 (Bankr. D.D.C.1980) (same); *In re Lenihan,* 4 B.R. 209, 211 (Bankr.D.R.I.1980) (same) *with In re Rutenberg,* 158 B.R. 230, 233 (Bankr. M.D.Fla.1993) (appointment of examiner not mandatory under 1104(b)(2)); *In re Shelter*

---

1. This section was formerly section 1104(b) of the Bankruptcy Code and many of the cases reference it as such.

*Resources Corp.*, 35 B.R. 304, 305 (N.D.Ohio 1983)(same). *See also Keene Corp. v. Coleman (In re Keene Corp.)*, 164 B.R. 844 (Bankr.S.D.N.Y.1994). Even where the statute has been held to be mandatory, "the bankruptcy court retains broad discretion to direct the examiner's investigation, including its nature, extent, and duration." *In Re Revco D.S., Inc.*, 898 F.2d at 501.

In an apparent concern that the mandatory, non-discretionary relief requested may not be available under the circumstances presented here, the Claims Traders have also moved under section 1104(c)(1), the discretionary provision, and section 105, the Bankruptcy Code analogue to the All Writs statute which provides the court with substantial discretionary powers. As is set forth hereinafter, I find no basis to exercise discretion in their favor.

 Moreover, this court need not resolve the issue of mandatoriness because regardless of whether section 1104(c)(2) is mandatory or discretionary, a party in interest may waive its right to seek the appointment of an examiner. *See In re Schepps Food Stores, Inc.*, 148 B.R. 27, 30 (S.D.Tex.1992); L. King, 7 *Collier on Bankruptcy* ¶ 1104.03[2][b] at 1104–37 (15th ed. rev.1996) (hereinafter *"Collier"*) ("Failure to make a timely request for the appointment of an examiner may provide the court with a basis for denying the request on the ground of laches."). *See also In Re Revco D.S., Inc.*, 898 F.2d at 501 (Court noted that it was not deciding the issue of whether "last-minute demands for an examiner" constitute abuse). For the reasons set forth below, the Claims Traders have waived the right to seek such relief at this juncture.

First, the Claims Traders have allowed the entire thirteen-month investigation surrounding the Acquisition to be conducted by the Debtors' professionals, at significant cost to the estates, without seeking the appointment of an independent third party. The appointment of an examiner to conduct a new investigation at this time would be duplicative, needless and wasteful.

Second, it is simply inappropriate, at this late date, to take issue with the conclusions set forth in the Green Book when the movants received the report eight months ago. While the movants disagree with those conclusions, they offer no proposed pleading (complaint) for adoption by any proposed examiner, in support of their own conclusions that valuable causes of action exist. With nineteen days left before the limitations period expires, the impracticality of the movants' request is obvious and suggests that the request is nothing more than a litigation/negotiation tactic. Finding and qualifying an examiner would consume the better part of a week, leaving a mere twelve days or less for an examiner to conduct a reasonable investigation of a complex series of transactions (which the movants term "the 1992 leveraged buyout"), and, possibly, conclude that viable claims exist and commence avoidance actions within the statutory period. The movants have had over nineteen months to seek this relief. They are barred by their own inaction from seeking it at this late date.

During argument on this motion several parties observed that the mere filing of a complaint against Stop & Shop may inflate the value of the claims held by the Claims Traders. No evidence was presented to demonstrate that the movants are motivated solely by the possible effect on the secondary market if the requested relief were to be granted. I do note, however, that they chose not to respond to this allegation.

 Lastly, the crux of the relief requested is untenable. The order sought by the Claims Traders (*see* Exhibit X to the Motion) directs an examiner, without first investigating and concluding that viable claims exist, to commence lawsuits simply to preserve the running of the limitations period, in violation of Rule 9011 of the Federal Rules of Bankruptcy Procedure. *See Fed. R. Bankr.P.* 9011 (requiring that the complainant certify, after reasonable inquiry, that the complaint is well grounded in fact and warranted by existing law). As at least one party has observed, the order simply requires the examiner to "sue now, investigate later." In response, the Claims Traders posit that, in essence, no investigation is really necessary. *See Reply* at ¶ 10. The main purpose of an examiner, however, is primarily investigative.

7 *Colliers* ¶ 1104.03[1] at 1104.33 (after the investigation, "the examiner typically reports the findings to the court and to the parties in the case."). The movants simply denigrate the duties of an examiner.

While they posit their request as a do-or-die situation in light of the running of the limitations period, the movants are not seeking permission to prosecute the claims on their own, although the Debtors and the Creditors' Committee have indicated that, as previously communicated, they would not oppose a petition to the court for standing to sue. Instead, the Claims Traders seek a court-appointed prosecutor, funded by the Debtors' estates, to preserve their own parochial interests. They quite candidly admit that they seek the appointment of an examiner to represent Stores and the other Debtor subsidiaries to prosecute claims against, among others, Parent. Yet the Motion requests the appointment of an overarching examiner for all cases, including that of Parent.

While the tenor of the moving papers suggest that these two traders alone are guarding the interests of Stores, it should be noted that a *majority* of the Creditors' Committee is comprised of the creditors of *Stores*. After substantial review of the Green Book and due diligence by, among others, the Creditors' Committee's professionals, the Creditors' Committee has concluded that no viable claims against third parties exist.

As to the issue of conflict among the professionals for both the Debtors and the Creditors' Committee in dealing with the Intercompany Claim, it has been acknowledged by several parties that an objective third party, such as a plan facilitator/mediator may, at some point, become necessary in order to resolve open issues, including the Intercompany Claim. However, there is no urgency with respect to that resolution. The Debtors have stipulated among themselves that the period within which the Intercompany Claim must be asserted will be tolled. Furthermore, all parties, including the movants, have informed the court, that, notwithstanding this motion, negotiations are ongoing, and there is no current threat of impasse. Accordingly, the court will consider the request for the appointment of a plan facilitator/mediator when and if such appointment proves necessary.

*Conclusion*

The court has considered the objections raised by all of the respondents and finds substantial merit to each of those objections, which in some measure inform this court's decision. In view of the foregoing, the court finds the relief sought to be inappropriate, improper and improvident. Accordingly, the motion for the appointment of an examiner is denied.

IT IS SO ORDERED.