In re REVCO D.S., INC., et al., Debtors.

Conrad J. MORGENSTERN, U.S. Trustee, Plaintiff–Appellant,

v.

REVCO D.S., INC., et al., Defendants–Appellees.

No. 89–3545.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 26, 1990.

Decided March 14, 1990.

Bruce G. Forrest, William Kanter, Dept. of Justice Appellate Staff, Civ. Div., John E. Logan, U.S. Dept. of Justice Office for U.S. Trustees, Washington, D.C., for plaintiff-appellant.

Barbara H. Anderson, I. William Cohen, Pepper, Hamilton & Scheetz, Detroit, Mich., for Revco D.S., Inc.

Robert E. Gerber, Alan N. Resnick, argued, Brad E. Scheler, Madlyn B. Gleich, Nancy Guller Hayt, Fried, Frank, Harris, Shriver & Jacobson, New York City, Thomas R. Lucchesi, John Silas Hopkins, III, Baker & Hostetler, Cleveland, Ohio, Michael J. Crames, Levin, Weintraub & Crames, New York City, for Unsecured Noteholders Committee.

Before MARTIN and RYAN, Circuit Judges, and BROWN, Senior Circuit Judge.

BAILEY BROWN, Senior Circuit Judge.

This case presents two questions: whether a United States bankruptcy trustee has standing under 11 U.S.C. § 307 to appeal a decision of the bankruptcy court refusing to appoint an examiner under 11 U.S.C. § 1104(b)(2), and whether § 1104(b)(2) in fact requires that an examiner be appointed. Because we conclude that the U.S. trustee has appellate standing, we reverse the decision of the district court. Because we conclude that § 1104(b)(2) does require the appointment of an examiner, we reverse the decision of the bankruptcy court.

## I

In 1986, Revco D.S., Inc., owner of a nationwide chain of drug stores, formed a holding company which acquired all outstanding shares of Revco's common stock in a leveraged buyout. Two years later the reorganized company declared bankruptcy. The U.S. trustee for Ohio and Michigan, appellant here, appointed committees to represent the creditors' interests. *See* 11 U.S.C. § 1102 (Supp.1989).

Less than two months later, the U.S. trustee moved under 11 U.S.C. § 1104(b)(2) that the bankruptcy court appoint an examiner to review the debtors' leveraged buyout, which motion the debtors and creditors unanimously opposed. A group of creditors, however, made their own motion that the court allow a private accounting firm to investigate the buyout on their behalf. The court denied both motions as premature and unnecessary, specifically rejecting the U.S. trustee's contention that § 1104(b)(2) compelled it to appoint an examiner at the trustee's request.[1]

The trustee appealed to the district court, which dismissed the case, holding that the trustee lacked standing to appeal because the bankruptcy court's decision had not affected his pecuniary interest. 99 B.R.

778. The trustee then appealed both the question of standing and the question of the mandatory appointment of an examiner to this court. Both are questions of law which we review *de novo*. *See Williams v. California 1st Bank*, 859 F.2d 664, 666 (9th Cir.1988). We note that the district court's decision was a final order which we have jurisdiction to review under 28 U.S.C. § 158(d).

## II

■ The district court ruled that the U.S. trustee lacked appellate standing because the bankruptcy court's order had not affected his pecuniary interests. We believe this incompletely states the rule of appellate standing in bankruptcy. The pecuniary interest test was a judicial construction of § 39(c) of the original bankruptcy code adopted in 1898, which limited appellate standing to "persons aggrieved" by a court's actions. 11 U.S.C. § 67(c) (1976) (repealed 1978). That section of the Code has been repealed, but courts continue to limit appellate standing to persons aggrieved, by which they mean persons with a financial stake in the bankruptcy court's order. *See, e.g., In re El San Juan Hotel*, 809 F.2d 151, 154–55 (1st Cir.1987).

However useful the pecuniary interest test may be to restrict unnecessary meddling and pointless delay, it is not the only test. The Supreme Court has held that a *public* interest may also give a sufficient stake in the outcome of a bankruptcy case to confer appellate standing. *See SEC v. U.S. Realty & Imp. Co.*, 310 U.S. 434, 460, 60 S.Ct. 1044, 1055, 84 L.Ed. 1293 (1940); *see also Data Processing Serv. v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970) ("The question of standing ... concerns ... whether the interest sought to be protected ... is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question."). The United States trustee, an officer of the Executive branch, represents such a public interest.

---

1. The court approved the creditors' request to appoint a private accounting firm to investigate

the leveraged buyout when they renewed their motion several months later.

The office of U.S. trustee was established in 1978 to aid in the administration of bankruptcy cases, a task which the courts had previously performed. Congress concluded that the system did not work well and created the appearance of bias. *See* H.Rep. No. 595, 95th Cong. 88–99, 2d Sess. 404, *reprinted in* 1978 U.S. Code Cong. & Admin.News 5787, 5963, 6049–60. Congress specified that the U.S. trustees were to be independent of direct court supervision, as "executives of the bankruptcy network"; it likened the U.S. trustee's relation to that of a prosecutor. *Id.*

The district court described the U.S. trustee as a watchdog rather than an advocate, *cf.* H.Rep. 764, 99th Cong., 2d Sess. 27, *reprinted in* 1986 U.S.Code Cong. & Admin.News 5227, 5240, which the court believed deprived the trustee of an interest in the proceedings. But a good watchdog guards the interests of those for whom it watches; the roles are not incompatible. As Congress has stated, the U.S. trustees are responsible for "protecting the public interest and ensuring that bankruptcy cases are conducted according to law." H.Rep. 595 at 109, *reprinted in* 1978 U.S. Code Cong. & Admin.News at 6070. That is the interest the U.S. trustee has pursued in this case, and that interest gives him standing to appeal.

We find further proof in the structure of the bankruptcy code that Congress intended the U.S. trustee to have appellate standing. Section 307 states that the U.S. trustee "may raise and may appear and be heard" on any issue. *See* 11 U.S.C. § 307 (Supp.1989). Other sections of the Code give the same right to other government agencies. *See* 11 U.S.C. § 1109(a) (1979) (Securities & Exchange Commission); 11 U.S.C. § 1164 (1979) (Interstate Commerce Commission and Department of Transportation). But those provisions also explicitly withdraw the agencies' right to appeal. *See also* H.Rep. No. 595, 95th Cong., 2d Sess. 404, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6360 (legislative history). No such limitation, either in the words of the statute or in the legislative history, is placed on the right of the U.S. trustee to appeal. Construing these sections of the Code *in pari materia,* with reference to one another, we find that the use of limiting language in §§ 1109(a) and 1164 which was omitted from § 307 strongly suggests that Congress did not intend to limit the U.S. trustee's appellate standing.

### III

■ Having decided the question of standing, we also decide the merits of the trustee's claim that § 1104(b)(2) requires the appointment of an examiner. Because this is a question of law, because the record is fully developed, and because further delay would impede the intended role of the examiner, we see no reason to remand this issue to the district court. *See Singleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976).

■ The requirement that an examiner be appointed is a question of statutory interpretation, the resolution of which begins with the words of the statute. We give those words their "ordinary, contemporary, common meaning." *Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979). Section 1104(b) states:

> [A]t any time before the confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court *shall* order the appointment of an examiner to conduct an investigation of the debtor as is appropriate, including an investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity ... if—
>
> (1) such appointment is in the interests of creditors ...; or
>
> (2) the debtor's fixed, liquidated, unsecured debts ... exceed $5,000,000.

11 U.S.C. § 1104(b) (1979 & Supp.1989) (emphasis added).

The provision plainly means that the bankruptcy court "shall" order the appointment of an examiner when the total fixed, liquidated, unsecured debt exceeds $5 mil-

lion, if the U.S. trustee requests one.[2] Black's defines "shall" as follows: "As used in statutes, contracts, or the like, this word is generally imperative or mandatory. In common and ordinary parlance ... the term 'shall' is a word of command, and one which ... must be given a compulsory meaning; as denoting obligation." Black's Law Dictionary 1233 (5th ed. 1979).

The debtors cite several cases which suggest that the word "shall" in a statute is not always a word of command. *See, e.g., In re General Oil Distribs., Inc.,* 42 B.R. 402 (Bankr.E.D.N.Y.1984); *In re Garber,* 4 B.R. 684 (Bankr.C.D.Calif.1980). In *General Oil Distributors* the bankruptcy court concluded that "shall," as used in 11 U.S.C. § 1104(a), a companion provision, did not compel it to appoint a private trustee except for cause or if it believed a trustee would serve the creditors' interests.

Section 1104(b)(1), which governs the appointment of an examiner when the total unsecured debt is less than $5 million, follows the language of § 1104(a); in both cases the appointment is left to the bankruptcy court's discretion. The contrast with § 1104(b)(2) could not be more striking. When the total "fixed, liquidated, unsecured" debt is greater than $5 million, the statute requires the court to appoint an examiner. *See also* 5 Collier on Bankruptcy § 1104.03[a][4] (15th ed. 1988). Unless § 1104(b)(2) requires the appointment of an examiner in such a case, it becomes indistinguishable from § 1104(b)(1). Again construing the statute *in pari materia,* as we must, *see Oates v. Oates,* 866 F.2d 203, 206 (6th Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 3163, 104 L.Ed.2d 1025 (1989), we find that the appointment of an examiner is mandatory under § 1104(b)(2).[3]

■ The debtors claim that such a construction of the statute invites abuse, and that the trustee or any other party in interest could needlessly prolong a case with last-minute demands for an examiner.

That is not the case before us, of course, and we do not decide it except to note that the bankruptcy court retains broad discretion to direct the examiner's investigation, including its nature, extent, and duration. Section 1104(b) plainly states that the court shall appoint an examiner "to conduct such an investigation of the debtor as is appropriate." Furthermore, the U.S. trustee may be removed by the Attorney General if he abuses his office. *See* 28 U.S.C. § 581(c) (Supp.1989).

Therefore, we REVERSE the decision of the district court and the decision of the bankruptcy court and REMAND with instructions to order the appointment of an examiner under 11 U.S.C. § 1104(b)(2).

---

**2.** The parties stipulated that such debts exceed $5 million.

**3.** We note parenthetically that our resolution of this second question also decides the first. If the U.S. trustee has a right to demand the ap-

pointment of an examiner, it follows that he should also have standing to appeal if the bankruptcy court refuses to comply. Without appellate standing, the right to have an examiner appointed would be a hollow one.