**In re CAMPOS WHOLESALE INC., Debtor.**

**In re AMERICAN LIFESTYLES, INC., Debtor.**

**In re SONOMA VINTNER'S CLUB, INC., Debtor.**

**Nos. C–93–2630, C–93–2942 and C–93–3154.**

United States District Court,
N.D. California.

April 19, 1994.

Ellyn M. Lazar, Santa Rosa, CA.

Minnie Loo, Peter H. Carroll, Jeannie C. Lightsey, Patricia A. Cutler, U.S. Dept. of Justice, San Francisco, CA., for Dept. of Justice.

Ray Olmstead, Santa Rosa, CA.

## OPINION AND ORDER IN CONSOLIDATED APPEAL AFFIRMING ORDERS OF BANKRUPTCY COURT

WILKEN, District Judge.

### I.

### INTRODUCTION

This matter came on regularly for hearing on March 25, 1994 before the Northern District of California, the Honorable Claudia Wilken presiding, on the consolidated appeal of the United States Trustee from the orders of the bankruptcy court in three separate actions awarding attorney Ray Olmstead fees at rate determined to be reasonable rather than at the billing rate mentioned in the applications for authorization of employment. This Court took the matter under submission. Based upon the written submissions and oral arguments of all counsel, the Court now affirms the orders of the bankruptcy court.

### II.

### JURISDICTION AND STANDARD OF REVIEW

The district court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a).

■ The bankruptcy court's award of attorneys' fees will not be disturbed on appeal absent an abuse of discretion or an erroneous application of the law. *Unsecured Creditors' Committee v. Puget Sound Plywood Inc.*, 924 F.2d 955, 957 (9th Cir.1991). The bankruptcy court's findings of fact are binding on the district court unless clearly erroneous. *Id.* The bankruptcy court's conclusions of law are reviewed *de novo*. *Ragsdale v. Haller*, 780 F.2d 794, 795 (9th Cir. 1986).

### III.

### STATEMENT OF FACTS AND PROCEDURAL HISTORY

Debtor Campos Wholesale, Inc. filed a Chapter 7 petition on December 5, 1988. Raymond Carey was appointed Chapter 7 trustee by the United States Trustee. In early 1989, Carey contacted attorney Olmstead. Olmstead quoted an hourly rate of $125.00, and Carey and Olmstead agreed that Olmstead would represent Carey. No written contract was executed, but Olmstead prepared for Carey an application and proposed order for bankruptcy court authorization of his employment.

The application stated that "the terms for employment are that Mr. Olmstead will bill at the rate of $125 per hour." The proposed order stated, on one hand, that the employment was being authorized "on the terms set forth" in the application and, on the other hand, that the trustee was authorized to pay Olmstead "a reasonable fee for his services" upon application to and order of the court. Neither the application nor the order cited statutory authorization for the proposed order. On March 15, 1989, Bankruptcy Judge Alan Jaroslovsky signed the proposed form of order.

Olmstead performed work for the estate from 1989 until June 1991, providing monthly billing statements throughout to the trustee reflecting a billing rate of $125.00 per hour. In 1992, Olmstead filed an application for compensation requesting fees for all services provided at the rate of $150.00 per hour. Olmstead's client, the trustee appointed by the United States Trustee, did not oppose the fee request, but the United States Trustee filed an objection.

The bankruptcy court, Judge Jaroslovsky presiding, held a hearing on the fee application. The court awarded the fees at the requested hourly rate of $150.00 on the grounds that it was reasonable. E.R. tab 6, p. 3–4. The U.S. Trustee moved for reconsideration of the order, on the grounds that

the bankruptcy court improperly enhanced the contractually required fee. The motion was denied without prejudice to a further motion supported by a declaration from Carey that the parties intended to limit the fees to $125.00 per hour. The court stated that it would honor any such a contractual limitation intended by Carey and Olmstead. On the record before it at the time, however, the court held that $150.00 per hour was the minimum reasonable fee. In support of that holding, the court made the following factual findings in its memorandum of decision:

1. At the time Olmstead was hired, there were no assets in the estate, so that if he had been unsuccessful there would have been no funds available to pay him;

2. Through Olmstead's efforts, the trustee recovered over $20,000 for distribution;

3. There was a delay in closing the estate through no fault of Olmstead's because the largest recovery made for the estate was to be paid over time; and

4. Based on the court's own knowledge of prevailing rates in the area for attorneys of Olmstead's experience: (a) the prevailing rate at the time of the hearing was $175.00 to $200.00 per hour; (b) the prevailing rate at the time of the original application was "in the $150 range;" and (c) in the circumstances of the case, a fee award of $125.00 per hour would be unfairly low. E.R. tab 10.

The U.S. Trustee again moved for reconsideration, submitting a declaration from Carey stating that he and Olmstead had agreed upon the hourly rate of $125.00 and that their agreement was embodied in the application for employment authorization prepared by Olmstead. The bankruptcy court held an evidentiary hearing on the motion for reconsideration. Judge Jaroslovsky asked Carey whether he had bargained for the rate of $125.00 to apply to the entire employment, or whether the language of the application was just "some wording that got into Mr. Olmstead's computer which was not a subject of express understanding between" the parties. Carey responded that the wording in the application was Olmstead's and that he did not recall bargaining for the rate to continue throughout the job.

Judge Jaroslovsky stated that the reason for his inquiry was that the common practice in the district is that compensation rates are not set at the beginning of employment, although the professional's current hourly rate is stated in the application. Instead the reasonable fee is determined by the court at the end of the employment. Carey agreed that this was the common practice and stated that he did not have a specific discussion with Olmstead that they would vary from this practice. The court found that there was no contractual limitation of the fees intended by Carey and Olmstead and therefore denied the motion for reconsideration. A final order approving the attorneys fees was issued on March 25, 1993.

A timely notice of appeal was filed by the United States Trustee on April 2, 1993. Upon the joint motion of the parties, this appeal was consolidated with the appeals in *In re American Lifestyles, Inc.*, C–93–2942, and *Sonoma Vintner's Club, Inc.*, C–93–3154. Each of the consolidated cases involve an award of fees at the rate of $150.00 per hour to Olmstead for representation provided to Carey as Chapter 7 trustee, with applications and orders for employment authorization identical to those in *Campos*.

### IV.

### DISCUSSION

1. *Appellant has standing in this matter.*

The Ninth Circuit has not considered the issue of whether the United States Trustee has standing to appeal a bankruptcy court award of attorneys fees. In general, the Ninth Circuit limits appellate standing to a "person aggrieved" by the bankruptcy court decision, which it defines as one who is "directly and adversely affected pecuniarily by an order of the bankruptcy court." *In re Fondiller*, 707 F.2d 441, 442–3 (9th Cir.1983).

Each of the circuit courts which has considered the issue of whether the U.S. Trustee has standing to appeal an order of the bankruptcy court, despite the lack of its own pecuniary interest, has found that it does. The leading case is *In re Revco D.S., Inc.*, 898 F.2d 498 (6th Cir.1990), in which the Sixth Circuit reversed a district court finding that the United States Trustee lacked standing to appeal the bankruptcy court's denial of

its motion to appoint an examiner, stating that "however useful the pecuniary interest test may be to restrict unnecessary meddling and pointless delay, it is not the only test." *Id.* at 499. The court found that the United States Trustee's statutory duty to protect the public interest in bankruptcy actions supplied sufficient interest to warrant appellate standing. *Id.* at 499–500. The court further found that Congress intended to give the United States Trustee appellate standing since it expressly limited other agencies' right to appeal but did not so limit the United States Trustee's authority. *Id.* at 500. The First Circuit and Fourth Circuit Courts of Appeals followed *Revco's* holding and reasoning. *In re Plaza de Diego Shopping Center Inc.,* 911 F.2d 820, 824 (1st Cir.1990) (U.S. Trustee has standing to appeal a bankruptcy court order appointing a trustee); *In re Clark,* 927 F.2d 793, 795 (4th Cir.1991) (U.S. Trustee has standing to appeal the bankruptcy court's denial of its motion to dismiss).

The Court concludes that the Ninth Circuit would follow *Revco* if presented with the issue. In the instant case, the United States Trustee is acting within his statutory role, as he is required to supervise the administration of bankruptcy cases by monitoring applications for compensation filed under § 330. 28 U.S.C. § 586(a)(3)(A). Therefore, appellant has standing.

2. *The bankruptcy court did not err in finding that it was not required to set the fee at the rate specified in the application for authorization of employment.*

Appellant argues that the application for employment authorization was submitted to and approved by the bankruptcy court pursuant to 11 U.S.C. §§ 327(a) and 328(a), which permit the trustee, with the approval of the court, to hire a professional to represent the trustee on specified, pre-approved terms. Where employment is authorized on pre-approved terms of compensation, the court may alter the terms after the conclusion of the employment only if the terms "prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions."

§ 328(a); *In re Reimers,* 972 F.2d 1127 (9th Cir.1992).

■ However, employment may be authorized pursuant to 11 U.S.C. § 327(a) only, such that only the employment itself, and not the terms and conditions of the employment, is pre-approved. The court later sets reasonable compensation as provided in 11 U.S.C. § 330. *See Puget Sound Plywood, supra,* 924 F.2d at 960; *In re Kucek Development Corp.,* 113 B.R. 652 (E.D.Cal.1990); *In re C & P Auto Transport Inc.,* 94 B.R. 682 (Bankr.E.D.Cal.1988) (general practice in Eastern District of California is to leave question of compensation for determination by the court pursuant to § 330); *In re Benassi,* 72 B.R. 44, 47 (D.Minn.1987) (cited approvingly by the Ninth Circuit in *Reimers, supra* ).

■ The order approving the employment in the instant case was ambiguous as to whether the terms for compensation were being pre-approved pursuant to § 328(a). The order cited no statutory authority. It purported on one hand to authorize employment on the terms and conditions set forth in the application, suggesting that the specific compensation terms recited in the application were being pre-approved. On the other hand, the order specified that the trustee should pay Olmstead "a reasonable fee" on application to and order of the court, suggesting that a reasonable fee was to be determined by the court as provided in § 330.

The bankruptcy court inquired into whether the parties intended to fix the fees at the rate of $125.00 per hour. The court made a factual finding that Carey and Olmstead did not so intend. There was conflicting evidence on this issue, and the court's factual finding was not clearly erroneous.

The court's finding was supported by the following facts. No written contract was executed by the parties indicating an express agreement as to terms of compensation. The application and order embodying the parties' agreement provided for the trustee to pay "a reasonable fee" upon approval of the court. Carey did not oppose the fee request of $150.00 per hour, not considering it a violation of the parties' agreement. Carey specif-

ically stated that he did not recall bargaining for the rate of $125.00 to continue throughout the employment. The usual practice in the district is to recite the attorney's current billing rate but to leave the fee determination to the court at the time payment is made. Carey's general practice as trustee is also to leave the fee determination to the court. Carey did not discuss with Olmstead varying from the standard practice in the district.

In light of the finding that the parties did not intend to fix the fees at $125.00 per hour, § 328(a) was inapplicable. Therefore, the bankruptcy court was not required to set the fees at Olmstead's initial billing rate. Instead, the court was required to determine a reasonable fee under § 330.

3. *The bankruptcy court did not err in setting the reasonable fee at the hourly rate of $150.00.*

 11 U.S.C. § 330 provides that the court shall determine the reasonable compensation for actual, necessary services based on the nature, extent and value of such services, the time spent on such services, and the cost of comparable services other than in a bankruptcy case. The bankruptcy court properly applied that standard in the instant cases.

The bankruptcy court based its fee awards on the high value of Olmstead's services (creating substantial assets for previously impoverished estates), the number of hours spent by Olmstead in supplying the services, Olmstead's standard billing rate at the time the employment was authorized and at the time of the fee application, the "going rate" for providing the services in the community at the time employment was originally authorized and at the time of the fee application, the risk that no fees would have been paid if Olmstead's representation failed to create assets for the estates, and the delay in compensation. In light of all these factors, the court expressly found that compensation at $125.00 per hour would be "unfairly low."

The bankruptcy court did not abuse its discretion in considering the above factors. The court's finding that $150.00 per hour was a reasonable rate of compensation was supported by each of the factors listed above and by Carey's opinion that the rate was reasonable. Accordingly, the court's finding was not clearly erroneous, and the court did not abuse its discretion in setting the hourly rate at $150.00.

V.

CONCLUSION

Appellant has not shown that the factual finding of the bankruptcy court, that the parties did not intend to limit the court's authority in setting attorneys fees, was clearly erroneous. The bankruptcy court exercised its discretion properly in setting a reasonable fee. Accordingly, the order of the bankruptcy court is hereby affirmed.

IT IS SO ORDERED.