**Loretta M. LYNCH and Carl Wood, Commissioners for the California Public Utilities Commission, Appellants,**

v.

**CALIFORNIA PUBLIC UTILITIES COMMISSION, Official Committee of Unsecured Creditors and Pacific Gas & Electric Company, Appellees.**

No. C–04–0580–VRW.

United States District Court, N.D. California.

July 15, 2004.

Thomas J. Long, Advisor to Commissioner Lynch, San Francisco, CA, Alan M. Mansfield, Rosner, Law & Mansfield, San Diego, CA, for Appellants.

Walter Ryerson Rieman, Alan Kornberg, Brian S. Hermann, Paul, Weiss, Rifkind, Wharton & Garrison, LLP, New York, NY, Arocles Aguilar, California Public Utilities Commission, San Francisco, CA, Janet Lynn Hensch, Michael H. Diamond, Milbank, Tweed, Hadley & McCloy LLP, Los Angeles, CA, for Appellees.

Amy E. Margolin, James L. Lopes, Janet A. Nexon, Jerome B. Falk, Ethan P. Schulman, Howard, Rice, Nemerovksi, Canady, Falk & Rab, Martin S. Schenker, Stephen C. Neal, Cooley Godward LLP, San Francisco, CA, for Debtor–in–Possess.

## ORDER

WALKER, District Judge.

The instant appeal arises from the high-profile bankruptcy of appellee Pacific Gas and Electric Company (PG & E). PG & E filed for Chapter 11 bankruptcy on April 6, 2001. On December 18, 2003, after extensive settlement negotiations, appellee California Public Utilities Commission (CPUC) voted 3–2 to approve a modified settlement agreement (MSA) between the CPUC and PG & E. Appellants Loretta Lynch and Carl Wood, who are CPUC commissioners, cast the two dissenting votes. On January 5, 2004, the United States Bankruptcy Court entered a confirmation order implementing the MSA. This appeal followed.

Several months ago, the court denied appellants' motion to stay the January 5 confirmation order. Doc # 77. In that order, the court expressed its view that appellants' standing to bring this appeal was highly questionable. 4/19/04 Ord. (Doc. # 77) at 5:7–11. Unsurprisingly, PG & E, the Official Committee of Unsecured Creditors (OCUC) and the CPUC have filed motions to dismiss this appeal on that very ground. Docs. #16, 42, 82, 83. Having considered the parties' arguments, the court is persuaded that its initial assessment of appellants' standing is correct. Accordingly, the court GRANTS appellees' motions to dismiss this appeal (Docs. #16, 42, 82, 83).

I

A

PG & E filed for Chapter 11 bankruptcy on April 6, 2001. Decl. James L. Lopes (Lopes Decl.; Docs. #49, 51–53) at 1 ¶ 2. PG & E and the CPUC then filed competing plans of reorganization. Id. at 1 ¶ 4. On November 18, 2002, the Bankruptcy Court commenced a hearing on the competing plans. Id. at 2 ¶ 5. In March 2003, the Bankruptcy Court ordered that the parties participate in a judicial settlement conference and subsequently stayed all proceedings with respect to confirmation of the competing plans. Id. at 2 ¶ 6. The bankruptcy settlement judge issued a gag order limiting the number and identity of participants and restricting communications between participants and nonpartici-

pants. See Decl. Loretta Lynch (Lynch Decl.; Decl. Alan Mansfield (Mansfield Decl.; Doc. # 68) at 2 ¶ 1, Exh. 3) at 1–2 ¶¶ 3–5. Only the CPUC's president, and not the other four CPUC commissioners, was allowed to participate. See id.

On June 19, 2003, PG & E and the CPUC's staff announced that they had reached agreement on a proposed settlement that would resolve disputes relating to the competing reorganization plans, certain litigation and certain pending CPUC proceedings. Lopes Decl. at 2 ¶ 7. On July 31, 2003, PG & E filed the proposed settlement agreement (PSA), which incorporated the terms of the proposed agreement and was contingent upon approval by the CPUC. Id. at 2 ¶ 7, Exh. C.

Shortly afterward, on August 8, 2003, the Bankruptcy Court issued a discovery and trial setting order. Id. at 2 ¶ 8, Exh. D. In that order, the Bankruptcy Court set September 2, 2003, as the deadline for filing objections to confirmation of the plan. Id. The bankruptcy court gave further notice of that deadline through its notice of: (A) voting record date and voting deadline; (B) hearing to consider confirmation of plan; and (C) deadline for filing objections to confirmation. Id. at 2–3 ¶ 10, Exh. F. The notice was served on both the CPUC itself and the CPUC's counsel. Id. at 3 ¶ 11. The notice was also published in multiple national and local newspapers. Decl. Anton H. Hadjivassiliou (Hadjivassiliou Decl.; Doc. # 50) at 1–2 ¶¶ 2–15, Exhs. A–L. The gag order, however, remained in effect, preventing appellants from learning about the substance of the settlement negotiations or the reasoning behind the PSA. Lynch Decl. at 2 ¶ 5.

After the disclosure statement had been approved and distributed and the creditors and equity interest holders voted to approve the PSA, the Bankruptcy Court commenced a confirmation hearing on November 10, 2003. Lopes Decl. at 3 ¶ 12. Neither of the appellants appeared at the hearing or objected to any portion of the PSA at that time. Id. The Bankruptcy Court heard closing arguments on November 24, 2003. Id.

Also in November 2003, the settlement judge proposed a decision that would reject the PSA as contrary to law. Lynch Decl. at 2 ¶ 7. The CPUC president issued two alternate decisions that proposed approving the PSA. Id. Appellants, along with CPUC Commissioner Brown, each issued separate alternative decisions rejecting the PSA. Id. At that time, given Commissioner Brown's disapproval of the PSA, appellants believed that the PSA would not be approved at the upcoming December 18, 2003, CPUC meeting. Opp. Mots. Dism. (Doc. # 85) at 4:5–7; see Lynch Decl. at 3 ¶ 9.

On December 12, 2003, the Bankruptcy Court issued an order approving the PSA and overruling the objections to its confirmation. Lopes Decl. at 3 ¶ 14, Exh. H. The approval order was conditioned on approval by the CPUC. Id. On December 15, 2003, Commissioner Brown apparently changed his position on the PSA based on a deal that had been struck between PG & E and certain consumer groups. See Lynch Decl. at 2–3 ¶ 8. The PSA was modified to reflect this change, and the modified settlement agreement (MSA) was then given to the CPUC. See id. The CPUC approved the MSA on December 18, 2003, by a vote of 3–2. Lopes Decl. at 3 ¶ 15, Exh. I. Appellants cast the two dissenting votes. See id. The CPUC and PG & E signed the MSA on that same day. Id. at 4 ¶ 16, Exh. J.

On December 22, 2003, appellant Lynch made her first appearance in the Bankruptcy Court. Id. at 4 ¶ 17. Appellant Wood, however, did not appear. Id.

Lynch's lawyer objected to the Bankruptcy Court's confirming the MSA on the ground that a confirmation order could not be entered unless the CPUC itself, and not its lawyers, approved the order's form and substance. Id. at 4 ¶¶ 17, 18, Exh. K. Appellant Lynch raised no other objections. See id. The Bankruptcy Court overruled Lynch's objection and entered the confirmation order that same day. Id. at Exh. K. Shortly afterward, the CPUC met and approved the confirmation order's form and substance. Id. at 4 ¶ 19, Exh. L.

After the confirmation order was entered, the City of Palo Alto filed a motion to stay the effect of the confirmation order, with which appellants joined. Id. at 4 ¶¶ 20, 21, Exhs. M, N. The Bankruptcy Court denied the motion to stay on January 5, 2004. Id. at 5 ¶¶ 23, 25, Exhs. P, R. At the January 5 hearing, the Bankruptcy Court commented that the objection that appellant Lynch had made at the December 22 hearing probably could not have been raised until after the CPUC's December 18 decision. See id., Exh. P at 35:7–11. The Bankruptcy Court also recognized that, in the context of asking for a stay, it did not appear that the appellants had preserved the issues raised in support of the stay. See id. at 60:7–61:3. On that same date, the Bankruptcy Court also issued an amended decision that approved the MSA and addressed contested areas of state law. See In re PG & E Co., 304 B.R. 395 (Bankr.N.D.Cal.2004) (Montali, Bankr J).

**B**

Appellants filed a notice of appeal with the district court on February 11, 2004. Doc. # 1. Appellants object to the Bankruptcy Court's ruling on the grounds that, inter alia: (1) the MSA illegally surrenders the CPUC's duty to ensure "just and reasonable" utility rates; (2) the MSA allows injunctive and declaratory relief against the CPUC in violation of the Eleventh Amendment; (3) the MSA requires the CPUC commissioners to "support" the MSA in all legislative, judicial and administrative fora in violation of the First Amendment. Lopes Decl. at 5 ¶ 24, Exh. Q.

The matter was originally assigned to Chief Judge Marilyn Hall Patel. Both PG & E and the CPUC filed requests for leave to file motions to dismiss the appeal for lack of standing. Docs. #5, 16. On February 17, 2004, PG & E filed a notice of related cases. Doc. # 3. Subsequently, and after conferring with Judge Patel's staff and obtaining her concurrence, the undersigned related this case, and the matter was reassigned on March 19, 2004. Doc. # 34.

On March 30, 2004, appellants filed a motion to stay, along with a motion to shorten time for hearing of that motion. Docs. #35, 37. All three appellees opposed the motion to shorten time, and PG & E also filed the instant motion to dismiss. Docs. #41, 42, 44, 46. In light of the fact that PG & E's plan of reorganization was scheduled for implementation on April 12, 2004, the court held a hearing on the motion to stay on April 9, 2004. Doc. # 80. Later on that same date, the court issued a written order denying appellants' motion to stay. Doc. # 77. The court based this denial primarily on the "significant harm to PG & E, its creditors and the public that a stay would cause and the resulting sharp imbalance of the hardships that a stay would impose upon appellees." 4/9/04 Ord (Doc. # 77) at 2:3–6. The court also commented that appellants' grounds for standing appeared rather weak. Id. at 5:16–6:11.

Appellants nevertheless continued to pursue their appeal, and PG & E and the CPUC renoticed their motions to dismiss

for lack of standing. Docs. #82, 83. The court took oral argument on the motions on July 15, 2004.

## II

### A

 PG & E and CPUC first challenge appellant's standing to bring this appeal based on procedural grounds. PG & E Mot. Dism. (Doc. # 42) at 9:11–10:12, 11:13–12:14; CPUC Mot. Dism. (Doc. # 16) at 6:19–7:7. Federal courts agree that, to have standing to bring a bankruptcy appeal, appellants must have attended the bankruptcy court proceedings and timely objected to the order. *In re Weston,* 18 F.3d 860, 864 (10th Cir.1994); *In re Schultz,* 956 F.2d 686, 690 (7th Cir.1992); *In re Commercial Western Finance Corp.,* 761 F.2d 1329, 1335 (9th Cir.1985); *In re Schwinn Bicycle Co.,* 209 B.R. 887, 892 (N.D.Ill.1997) (Alesia, J); see *In re Cult Awareness Network, Inc.,* 151 F.3d 605, 610 (7th Cir.1998); *In re Malmart Mortgage Co.,* 166 B.R. 499, 503 (D.Mass.1994) (Saris, J). These prerequisites are only excused if appellants failed to receive proper notice of the proceedings below and of their opportunity to object to the proposed action. *In re Schultz,* 956 F.2d at 690; *In re Commercial Western,* 761 F.2d at 1335. The *In re Schwinn* court summarized effectively the rationale behind the attendance and objection requirement:

> "When a party to litigation receives notice that a matter will be heard, it is his duty to appear at the hearing and present to the court evidence and legal authorities which will be of aid to the court in making its decision. If he does not do so, the court must make its decision without the benefit of any evidence which such person might have made available, and the court must act upon the presumption that persons who are absent are not interested in the matter

> before it or will be satisfied with such decision as the court may make. To permit persons who did not participate in proceedings of which they are on notice to complain of the result of such proceedings would cause unlimited confusion and even disrespect of the courts and their authority."

*In re Schwinn,* 209 B.R. at 892, quoting *In re Mifflinburg Body Co.,* 54 F.Supp. 560, 561 (M.D.Pa.1944).

In the case at bar, appellants have not complied with these prerequisites. First, there can be little doubt that appellants had notice of the proceedings at issue. The PSA was filed on July 31, 2003, and on August 8, 2003, the Bankruptcy Court issued an order setting the deadline for filing objections as September 2, 2003. Lopes Decl. at 2 ¶¶ 7, 8, Exhs. C, D. Appellants thus should have been aware of this deadline because notice was served on both the CPUC itself and the CPUC's counsel and was published in national and local newspapers. See id. at 3 ¶ 11; Hadjivassiliou Decl. at 1–2 ¶¶ 2–15, Exhs. A–L. Appellants do not contend that they were unaware of these deadlines.

Despite such notice, neither appellant appeared at any of the Bankruptcy Court proceedings until appellant Lynch's appearance at the December 22, 2003, hearing at which the Bankruptcy Court entered final approval of the MSA. Lopes Decl. at 4 ¶ 17. At that time, however, Lynch raised the objection that the CPUC itself had not approved the MSA. Id. at 4 ¶¶ 17, 18, Exh. K at 110:14–115:14. One of Lynch's attorneys stated the objection as follows:

> So the Commission being one of the parties, the Commission being defined to include each and every one of the Commissioners * * * the confirmation order needs to be approved in form and sub-

stance or needs to be in form and substance satisfactory to each of the Commissioners.

*Id.* at 4 ¶ 18, Exh. K at 115:9–14. The first time appellants both appeared and objected to the MSA on the grounds raised in this appeal seems to be on December 30, 2003, when they joined the City of Palo Alto's motion to stay. See id. at 4 ¶¶ 20, 21, Exhs. M, N. By that point, the confirmation hearings had long since concluded, and the bankruptcy court had already approved the settlement and entered the December 22 confirmation order. By failing to attend the hearings of which they undoubtedly had notice and failing to file their objections to the PSA or the MSA until after the MSA had been confirmed, appellants deprived the Bankruptcy Court of notice of their interest in or objections to the PSA and the MSA.

Appellants contend that the attendance and objection requirement should be excused in this case and present several arguments in support of their position. First, appellants argue that there was nothing to which they could have objected before the December 18, 2003, approval of the MSA by the CPUC. Opp. Mots. Dism. (Doc. # 85) at 20:6–19. Appellants point out that the settlement negotiations that produced the PSA were conducted under a gag order. Appellants also note that they believed that the CPUC would not approve the PSA, based on Commissioner Brown's initial position on the PSA. And appellants contend that the Bankruptcy Court agreed at the January 5, 2004, hearing that appellant Lynch could not have brought her December 22, 2003, objection before the December 18, 2003, CPUC meeting.

None of these facts provides appellants with a sufficient excuse. As appellees point out, the fact that *settlement negotiations* were confidential does not mean that the *terms of the PSA* were similarly confi-

dential. Indeed, the PSA was filed on July 31, 2003, and was substantially identical to the MSA approved by the CPUC and confirmed by the bankruptcy court. See Lopes Decl. at 1 ¶ 3, Exh. A at Exh. A; id. at 2 ¶ 7, Exh. C at Exh. D; id. at 4 ¶ 16, Exh. J. Indeed, the provisions of the MSA that appellants seek to challenge appear to have been included in the PSA. See id. at 2 ¶ 7, Exh. C at Exh. D at §§ 3, 19–23; id. at 4 ¶ 16, Exh. J at §§ 3, 19–23; id. at 5 ¶ 24, Exh. Q. Certainly, appellants were aware of the PSA's terms and could have filed timely objections. Commissioner Brown's previous opposition to the PSA in no way inhibited appellants' ability to file objections, and appellants' erroneous assumption regarding the outcome of the December 18, 2003, CPUC vote does not excuse their failure to object. Furthermore, appellants' argument regarding the bankruptcy court's statements of January 5 is simply incorrect: Judge Montali seems only to have referred to appellant Lynch's objection regarding CPUC approval, which is not at issue in this appeal. See Lopes Decl. at 5 ¶ 23, Exh. P at 35:7–11. Elsewhere in the January 5 hearing transcript, Judge Montali appears to agree with appellees that appellants failed to preserve the objections they raise in the present proceeding, although the record is not crystal clear what, if any, disposition Judge Montali made of this issue. See id. at 60:7–61:3.

Appellants next argue that they were not free to object to the PSA before the December 18 vote because they were required to keep an open mind before voting or they might face mandatory recusal. Opp. Mots. Dism. at 20:21–21:3. But appellants fail to explain why avoiding the possibility of recusal ought to trump compliance with the important procedural safeguards mandated in the Bankruptcy Court. As PG & E notes, this argument

borders on disingenuous. *Before* the December 18 vote, appellants both issued separate alternative decisions in which they rejected the PSA and proposed significant modifications. Lynch Decl. at 2 ¶ 7. In any event, even if appellants could not have objected until after the December 18 vote, this does not explain why appellants failed to raise their present objections at the December 22, 2003, hearing before the Bankruptcy Court issued its confirmation order.

■ Finally, appellants devote a substantial effort to arguing that it would work a manifest injustice not to excuse their failure timely to appear and object. Opp. Mots. Dism. at 22:8–24:25. Appellants' argument is that, under certain circumstances, appellate courts will consider objections made for the first time on appeal when doing so prevents a manifest injustice. It is true that the Ninth Circuit will, at its discretion, review an issue not raised prior to the appeal to prevent a manifest injustice. *Retail Flooring Dealers of America, Inc. v. Beaulieu of America, LLC*, 339 F.3d 1146, 1150 n. 5 (9th Cir.2003). Appellate courts may reach such issues when, for instance, they involve questions of jurisdiction or sovereign immunity. See *Ratanasen v. California Dep't of Health Serv.*, 11 F.3d 1467, 1473 (9th Cir.1993); *Rademacher v. Colorado Ass'n of Soil Conservation Dist. Medical Benefit Plan*, 11 F.3d 1567, 1571–72 (10th Cir.1993). But appellate courts do not appear willing to reach such issues unless the circumstances are exceptional or unless the issue is purely a matter of law whose resolution is certain. See *Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262, 1271 (10th Cir.2000); *Int'l Ass'n of Independent Tanker Owners v. Locke*, 148 F.3d 1053, 1063 (9th Cir.1998).

■ Even were it clear that a manifest injustice would result, the court would not be inclined to waive the appearance and objection requirements in this case. It may be true that the manifest injustice exception can be used in appeals from bankruptcy proceedings. See *In re Eashai*, 87 F.3d 1082, 1085 (9th Cir.1996); *In re Southland Supply, Inc.*, 657 F.2d 1076, 1079 (9th Cir.1981). But neither the *In re Eashai* nor the *In re Southland Supply* cases involved a situation in which the party raising the waived argument had failed timely to appear, nor did either case deal explicitly with the issue of standing. As PG & E points out, the manifest injustice exception seems applicable only when the question is what issues a party may appeal, as opposed to whether standing exists for the party to bring the appeal in the first place. Appellate courts, including the Ninth Circuit, have made clear that the appearance and objection requirement is a prerequisite to standing. *In re Weston*, 18 F.3d at 864; *In re Schultz*, 956 F.2d at 690; *In re Commercial Western*, 761 F.2d at 1335. In other words, failure to comply with this requirement restricts a party's ability not just to raise certain issues, but to bring an appeal at all. Appellants' problem is not that they simply failed to object below on *some* of the grounds on which they appeal. Rather, appellants failed to appear *at all* until *after* the Bankruptcy Court had completed its confirmation hearings and issued conditional approval of the PSA. Even when appellant Lynch entered a belated appearance, she failed to raise the issues presented in the instant appeal. The court does not believe that the manifest injustice exception has any application under the present circumstances.

Accordingly, the court finds that appellants' failure timely to appear and object in the bankruptcy proceedings below deprives them of standing to bring this appeal.

B

■ Even assuming arguendo that appellants had complied with proper procedure, appellees contend that appellants lack standing on substantive grounds as well. PG & E Mot. Dism. at 10:13–11:5, 12:16–16:16; CPUC Mot. Dism. at 7:8–9:6. To demonstrate constitutional standing, appellants are required to allege only an injury that is "fairly traceable" to the allegedly wrongful conduct, and that injury need not be financial. *In re PRTC, Inc.,* 177 F.3d 774, 777 (9th Cir.1999). But the Ninth Circuit has endorsed a further prudential limitation on standing in bankruptcy cases. Appellants must be "persons aggrieved" by the bankruptcy court's order. *Id.*; *In re Fondiller,* 707 F.2d 441, 443 (9th Cir.1983); *In re Menk,* 241 B.R. 896, 917 (9th Cir. BAP 1999). Other circuits follow this rule as well. See, e.g., *Krebs Chrysler–Plymouth, Inc. v. Valley Motors, Inc.,* 141 F.3d 490, 495 (3d Cir. 1998); *In re Alpex Computer Corp.,* 71 F.3d 353, 357 n. 6 (10th Cir.1995); *Kane v. Johns–Manville Corp.,* 843 F.2d 636, 641–42 (2d Cir.1988); *In re El San Juan Hotel,* 809 F.2d 151, 154 (1st Cir.1987).

■ To qualify as "persons aggrieved," appellants must demonstrate that they are " 'directly and adversely affected pecuniarily by an order of the bankruptcy court * * *.' " *In re PRTC,* 177 F.3d at 777, quoting *In re Fondiller,* 707 F.2d at 442; see also *In re Cult Awareness Network, Inc.,* 151 F.3d 605, 607 (7th Cir. 1998); *Kane,* 843 F.2d at 641. In other words, the bankruptcy court's order "must diminish the appellant's property, increase its burdens, or detrimentally affect its rights." *In re PRTC,* 177 F.3d at 777; see also *Krebs Chrysler–Plymouth,* 141 F.3d at 495; *In re El San Juan Hotel,* 809 F.2d at 154. The "person aggrieved" test is more restrictive than traditional Article III standing, which need not involve financial injury. *In re Alpex,* 71 F.3d at 357 n. 6; *Travelers Ins. Co. v. H.K. Porter Co,* 45 F.3d 737, 741 (3d Cir.1995). The rationale for such a strict standing requirement is that bankruptcy litigation almost always involves the interests of numerous persons who may or may not be parties to the litigation. Restricting standing to those who have a direct pecuniary interest in the litigation avoids endless appeals brought by individuals affected only indirectly by the bankruptcy court's order. *In re Alpex,* 71 F.3d at 357 n. 6; *In re El San Juan Hotel,* 809 F.2d at 154; *In re Fondiller,* 707 F.2d at 443. Given that appellants, who simply cast the dissenting votes at the CPUC meeting, do not appear to have any financial interest directly implicated in this litigation, it seems unlikely that they have standing to appeal the bankruptcy court's order.

■ In their opposition, appellants make several unsuccessful attempts to demonstrate that they have sufficient stake in this litigation as to constitute "persons aggrieved." First, appellants assert that a conflict exists between their official obligations as CPUC commissioners to ensure that rates are "just and reasonable" and the terms of the MSA. This conflict, appellants contend, gives them standing to sue. Opp. Mots. Dism. at 8:27–10:8. To support this argument, appellants rely on the statement in a footnote in a rather dated Supreme Court case. In *Bd. of Education v. Allen,* a case involving school board officials' First Amendment challenge to a law requiring distribution of free textbooks to children in both public and parochial schools, the plaintiffs' standing had not been challenged. Justice White nevertheless commented briefly that standing existed for the school board members because they were forced to choose between supporting a provision they believed unconstitutional

or likely being expelled from office and taking a reduction in school funds. 392 U.S. 236, 241 n. 5, 88 S.Ct. 1923, 20 L.Ed.2d 1060 (1968).

For several reasons, *Allen* provides appellants with little support. First, *Allen* is obviously not a bankruptcy case and thus does not address the more restrictive prudential requirement that appellants be "persons aggrieved." *Allen* is thus not on point and fails to account for the type of standing at issue in the present case.

Second, as PG & E points out, the Ninth Circuit has found that *Allen's* brief comment regarding standing has been substantially modified by subsequent Supreme Court decisions and is no longer controlling authority. *City of South Lake Tahoe v. California Tahoe Regional Planning Agency,* 625 F.2d 231, 235–38 (9th Cir. 1980). In *South Lake Tahoe,* the Ninth Circuit considered whether a mayor and city councilmembers had standing to appeal from a district court's order dismissing their injunctive and declaratory action against a regional planning agency. The *South Lake Tahoe* court noted:

> Were *Allen* the last word from the Supreme Court on standing, we could simply adopt the rationale of the quoted footnote and determine that the councilmembers in the case before us have standing on the basis that they believe that enforcing the [defendant's] ordinances would violate their oaths of office.

*Id.* at 236. But, according to the appellate court, the Supreme Court's more recent cases dealing with Article III standing foreclosed such a conclusion. To give officials standing on this basis "would convert all officials charged with executing statutes into potential litigants, or attorneys general, as to laws within their charge." *Id.* at 238. The Ninth Circuit has recently affirmed the validity of *South Lake Tahoe.*

See *Okanogan School Dist. # 105 v. Superintendent of Public Instruction for the State of Washington,* 291 F.3d 1161, 1165–66 (9th Cir.2002) (noting that "[w]e are bound by *South Lake Tahoe,* regardless of whether its holding has since been questioned").

Furthermore, since the Ninth Circuit's decision in *South Lake Tahoe,* the Supreme Court has squarely addressed the issue whether individual members of a public board have standing to sue and has concluded that they do not. *Bender v. Williamsport Area School District,* 475 U.S. 534, 543–545, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986). The Court concluded that "[g]enerally speaking, members of collegial bodies do not have standing to perfect an appeal the body itself has declined to take." *Id.* at 545, 106 S.Ct. 1326. California courts follow a similar approach and generally do not allow a dissenting member of an administrative body to challenge the legality of actions taken by that administrative body. See generally *Carsten v. Psychology Examining Cmte. of the Bd. of Medical Quality Assurance,* 27 Cal.3d 793, 166 Cal.Rptr. 844, 614 P.2d 276 (1980); *Braude v. City of Los Angeles,* 226 Cal. App.3d 83, 276 Cal.Rptr. 256 (1990). Additionally, the Supreme Court recently reviewed the analogous concept of legislative standing in *Raines v. Byrd,* 521 U.S. 811, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997), which involved a challenge to the Line Item Veto Act by those members of Congress who had voted against the Act. The Court noted that, at most, such dissenting vote-casters would have standing only if their votes would have been sufficient to change the outcome of the vote and the effect of their votes had in some way been nullified. See *id.* at 823–24, 117 S.Ct. 2312. In sum, there is simply no basis on which to find that *Allen* supports appellants' standing to bring the instant appeal.

■ Appellants also argue that they have sufficient interest in this litigation as to constitute "persons aggrieved." One such interest, appellants contend, is created by the fact that the MSA waives the CPUC's sovereign immunity rights and leaves open the possibility that appellants will be sued if they do not strictly comply with the MSA's other provisions. Opp. Mots. Dism. at 10:9–14:10. This argument is unconvincing for several reasons. For one thing, the MSA defines the CPUC to include the individual commissioners in their *official* capacities, which undercuts the notion that appellants potentially face personal liability. Lopes Decl. at 1 ¶ 3, Exh. A at Exh. A at 6–7. And even if appellants faced potential personal liability, this interest is simply not enough to convert appellants into "persons aggrieved." It is well established that an individual's status as a potential defendant in an adversary proceeding does not turn that individual into a "person aggrieved." *In re Fondiller*, 707 F.2d at 443; *In re Menk*, 241 B.R. at 917; see *In re PRTC*, 177 F.3d at 777–78; *In re Alpex*, 71 F.3d at 357–58.

Another interest that appellants contend makes them "persons aggrieved" is the alleged violation of their free speech rights. Opp. Mots. Dism. at 16:15–19:10. The MSA requires that the CPUC commissioners support the confirmation order in all judicial, administrative and legislative fora and that they cooperate in the MSA's consummation. Lopes Decl. at 4 ¶ 16, Exh. J at § 19. According to appellants, these provisions constitute prior restraints and forced speech. The court found this argument unconvincing last time and continues to find it so. As the court noted in its order denying appellants' motion to stay:

Even assuming that the court agrees with appellants that a provision such as [§ ]19 of the MSA constitutes a prior

restraint on speech, the jeopardy created by that provision has largely been alleviated. PG & E and the CPUC stipulated at the April 9 hearing that ¶ 19 should not be interpreted to restrict appellants in their individual capacity as CPUC commissioners from criticizing the MSA. Moreover, any issues presented by forcing appellants to "cooperate" in efforts to implement the MSA largely become moot the moment the plan becomes effective.

4/9/04 Ord. at 8:4–13.

■ Furthermore, even assuming that the court agrees with appellants that the MSA somehow infringes their free speech rights, the court does not believe that possible infringement of First Amendment rights is enough to convert appellants into persons aggrieved. As noted above, appellants must establish that they have a pecuniary interest that the bankruptcy order directly affects. See, e.g., *In re PRTC*, 177 F.3d at 777, quoting *In re Fondiller*, 707 F.2d at 442. It is true that courts sometimes elaborate upon this requirement by stating that the bankruptcy order "must diminish the appellant's property, increase its burdens, or detrimentally affect its *rights*." *In re PRTC*, 177 F.3d at 777 (emphasis added). But courts consistently emphasize that prudential limitation on standing in bankruptcy cases requires financial injury, and this direct financial injury requirement is what differentiates bankruptcy standing from mere Article III standing. See *In re Cult Awareness Network*, 151 F.3d at 607–08; *In re Alpex*, 71 F.3d at 357 n. 6; *Travelers Ins. Co.*, 45 F.3d at 741. Appellants do not cite a single case in which the Ninth Circuit (or any other court) has accepted the proposition that impairment of First Amendment rights gives an individual the status of a "person aggrieved." Indeed, the Seventh Circuit has explicitly rejected such a no-

tion. *In re Cult Awareness Network,* 151 F.3d at 608–09. Given the tenuousness of appellants' claims, the court does not believe that the Ninth Circuit would endorse such a proposition and thus declines to add First Amendment rights to the list of potential harms that transform an individual into a "person aggrieved."

Finally, appellants argue that the pecuniary interest standard is inapplicable to them because they are public officials who have been charged with protecting the public interest. Opp. Mots. Dism. at 14:11–16:14. This argument is wholly unconvincing for several reasons. First, it is true that some courts have recognized that the Securities and Exchange Commission (SEC) and the United States Trustee have the right to participate in bankruptcy proceedings, even when they lack a direct pecuniary interest in the bankruptcy proceedings and only seek to vindicate the public interest. See *SEC v. United States Realty & Improvement Co.,* 310 U.S. 434, 458–60, 60 S.Ct. 1044, 84 L.Ed. 1293 (1940); *In re Plaza de Diego Shopping Center, Inc.,* 911 F.2d 820, 824 (1st Cir. 1990); *In re Revco DS, Inc.,* 898 F.2d 498, 499–500 (6th Cir.1990); *In re Campos Wholesale Inc.,* 166 B.R. 914, 916–17 (N.D.Cal.1994) (Wilken, J). The reasoning of those cases, however, implies that standing in such cases rests largely on the specific statutory duties of the SEC and the United States Trustee. See *SEC,* 310 U.S. at 458–59, 60 S.Ct. 1044 (discussing statutory duties of the SEC); *In re Revco,* 898 F.2d at 500 (finding that the "structure of the bankruptcy code" indicated Congress' intent to give the United States Trustee standing to appeal); *In re Adkins,* 307 B.R. 880, 883 n. 2 (E.D.Mich.2002) (Borman, J) (citing 11 U.S.C. § 307). Appellants do not cite any case that recognizes a similar right for the CPUC or its commissioners. It is unclear, therefore, whether the so-called "public interest" exception to the pecuniary interest rule applies to the instant situation.

Even assuming that the CPUC possesses such a right to appeal, appellants are in no position to assert that right. The public duties that appellants are attempting to vindicate belong to the CPUC as a whole, and not to the individual commissioners themselves. See generally Cal. Const., art. XII, §§ 5, 6; Cal. Pub. Util. Code §§ 451, 701, 761, 762. Appellants cite no authority that would give them as individual commissioners the right to pursue an appeal. Indeed, the Supreme Court's decision in *Bender* explicitly recognized that dissenting members of a "collegial body" such as the CPUC have no prerogative to pursue an appeal when the collegial body itself has declined to undertake such an action. *Bender,* 475 U.S. at 544, 106 S.Ct. 1326; see also *Frissell v. Rizzo,* 597 F.2d 840, 844 (3d Cir.1979) (noting that a litigant has no standing to assert the rights of a third party); *In re Athos Steel and Aluminum, Inc.,* 69 B.R. 515, 519 (Bankr. E.D.Pa.1987) (Fox, Bankr. J.) (same).

In short, none of the bases upon which appellants seek to assert standing are sufficient. Appellants simply do not qualify as parties aggrieved by the bankruptcy court's order. Accordingly, the court GRANTS appellees' motions to dismiss (Docs. #16, 42, 83, 85).

### III

The court must also address one further administrative matter. PG & E's miscellaneous request to file a motion to dismiss (Doc. # 5) and appellants' motion to shorten time on their motion to stay (Doc. # 37) remain pending on the court's docket. Obviously, PG & E has filed (and the court has entertained) a motion to dismiss. See Doc. # 42. And the court granted appellants' request to hear the motion for

a stay on a shortened schedule and heard the matter on April 9, 2004. See doc # 80. Both of those motions (Docs. #5, 37), therefore, should be TERMINATED as moot.

### IV

For the foregoing reasons, the court GRANTS appellees' motions to dismiss this appeal (Docs. #16, 42, 82, 83) on the basis of appellants' lack of standing to pursue it. The court also TERMINATES PG & E's miscellaneous administrative request (Doc. # 5) and appellants' motion for an order shortening time (Doc. # 37) as moot.

As this order appears to dispose of the case, the clerk is directed to close the file and terminate all pending motions.

IT IS SO ORDERED.